Cynthia Campbell RAY, Appellant,

v.

The STATE of Texas, Appellee.

Nos. A14–87–00346–CR,
B14–87–00347–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 22, 1988.

Before J. CURTISS BROWN, C.J., and ROBERTSON and CANNON, JJ.

OPINION

J. CURTISS BROWN, Chief Justice.

A jury convicted Cynthia Campbell Ray of the murder of her parents, James H. Campbell and Virginia Campbell, as charged in two separate indictments. The jury also made an affirmative finding on use of a deadly weapon. The jury assessed punishment of confinement for life in the Texas Department of Corrections for each offense, the sentences to run concurrently. Appellant asserts six points of error. We overrule points of error one through five, but sustain point of error six and, as a result, affirm as reformed.

■ James and Virginia Campbell were gunned down while asleep in their home during the early morning hours of June 19, 1982. David West fired the shots that killed Mr. and Mrs. Campbell. West, who testified at appellant's trial pursuant to a plea bargain agreement with the State, averred appellant had provoked and aided him during the commission of the murders. In charging the jury, the court classified West as an accomplice as defined by TEX. CRIM.PROC.CODE ANN. art. 38.14 (Vernon 1979), which says:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence *tending to connect the defendant* with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense (emphasis added).

In her first point of error, appellant maintains her convictions must be reversed because there was insufficient evidence to corroborate West's accomplice testimony. We disagree.

In *Reed v. State*, 744 S.W.2d 112 (Tex. Crim.App.1988), the Court of Criminal Appeals stated that article 38.14 provides the only test for determining the sufficiency of evidence to sustain a conviction when an accomplice inculpates the accused. 744 S.W.2d at 125 n. 10. The *Reed* court stated

Bob Wicoff and David Cunningham, Houston, for appellant.

Cathleen Herasimchuk, Houston, for appellee.

that the appellate court should "eliminate from consideration the evidence of the accomplice witness and then examine the evidence of other witnesses with the view to ascertain *if there be inculpatory evidence, that is [,] evidence of incriminating character which tends to connect the defendant with the commission of the offense.* If there is such evidence, the corroboration is sufficient; otherwise, it is not." (emphasis in original, citations omitted). 744 S.W. 2d at 125, *quoting Edwards v. State,* 427 S.W.2d 629, 632 (Tex.Crim.App.1968).

The *Reed* court reaffirmed the following rules, long associated with application of article 38.14:

(1) each case must be considered on its own facts and circumstances;

(2) all the facts and circumstances in evidence may be looked to as furnishing the corroboration necessary;

(3) corroborative evidence may be circumstantial or direct;

(4) the combined cumulative weight of the incriminating evidence furnished by the non-accomplice witness which tends to connect the accused with the commission of the offense supplies the test;

(5) it is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt;

(6) insignificant circumstances sometimes afford most satisfactory evidence of guilt and corroboration of accomplice witness testimony.

744 S.W.2d at 126. If the record shows the accused was present, as in the instant case, *Reed* also restates the familiar rule that "[p]roof that the accused was at or near the scene of its commission, *when coupled with other suspicious circumstances,* may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *Reed,* 744 S.W.2d at 127, *quoting Brown v. State,* 672 S.W.2d 487, 489 (Tex.Crim.App.1984) (emphasis added).

Because the Texas Court of Criminal Appeals rejected the "more likely than not" test and reaffirmed the rules we have set

out above, article 38.14 continues to demand that the record contain non-accomplice evidence of suspicious circumstances which independently incriminate the accused before the jury can give effect to the accomplice's incriminating testimony. *See Reed,* 744 S.W.2d at 125–77; accord, *Jackson v. State,* 745 S.W.2d 4, 11 (Tex.Crim. App.1988) (after eliminating the accomplice's testimony we must "examine the remaining evidence to ascertain whether it independently tends to connect the appellant to the commission" of the offense.); *Gardner v. State,* 730 S.W.2d 675, 678 (Tex.Crim.App.1987); *Brooks v. State,* 686 S.W.2d 952, 958 (Tex.Crim.App.1985); *Hardesty v. State,* 656 S.W.2d 73, 76 (Tex.Crim. App.1983); *Paulus v. State,* 633 S.W.2d 827, 843 (Tex.Crim.App.1982); *Simmons v. State,* 650 S.W.2d 108, 109 (Tex.App.— Houston [14th Dist.] 1983, no pet.). It is undisputed appellant was present and at the side of West when the murders occurred. In addition, after considering the remainder of the record, based on the standards which *Reed* reaffirmed, we find sufficient incriminating corroborating evidence which independently tends to connect appellant to the murders of her parents.

Numerous excerpts of non-accomplice testimony from the record not only independently tend to connect appellant with the offenses committed, but also are strong enough for the jury to convict her for the murder. The first incriminating testimony tending to connect appellant with the murder of her parents was solicited by her own trial counsel on cross-examination of appellant's friend, Gwen Sampson.

Q. Let me ask you if this is what you said to the police concerning Cindy's statements to you about being there. Okay? And this is when you gave the first statement to the police. All right? I'm on page—page 3. "All I know is that she looked at me straight in the eye and said this is how it happened. I stood beside him with my children on the floor. I didn't look when he shot my father. I didn't look when he shot my mother but I felt that

her body must have jumped some." Did she say that to you?

A. Yes.

Q. That's what you told the police, right?

A. Yes.

Q. Then she said "... . She was dressed like a man so her children wouldn't recognize her." Did you say that to the police?

A. Something like that, yes.

Additional testimony from Gwen Sampson also tends to connect the appellant with the commission of the crime:

She [the appellant] said that Salino was the person who decided to kill her parents. That he was going to do it to make her well. They went to the house. He knew the floor plan better than she did ... and that they were in her parent's bedroom and he shot her parents and held a gun on her and said, "If you say anything, I'll shoot you."

Maria Gonzalez, the Campbell's maid, testified that appellant, nine days before her parents' murders, had been walking around the back of the Campbells' home, raising and lowering windows. Ms. Gonzalez further testified appellant began to climb into one of these open windows. When confronted by Maria, appellant appeared excited and nervous. Maria further stated that she relocked all of the downstairs windows the next day, and then on Friday, the day before the murders, she once more checked to insure all the windows were securely locked. She later stated that, before the murders, she heard the sound of a window being pushed open and five minutes later she heard the sound of shots being fired. The police investigation determined that the window appellant had been seen opening nine days earlier was the apparent point of entry for the murders. Finally, appellant's admission to the police that she had gone to her parents' home at 10 P.M. on the night of the murders tends to connect the appellant with the commission of the crime. This admission allowed the inference that she had an opportunity, alone and unobserved, to open the downstairs den window while her moth-

er was upstairs getting money for her. This testimony alone is enough to corroborate West's testimony. *Passmore v. State*, 617 S.W.2d 682, 684–85 (Tex.Crim. App.1981); *Nelson v. State*, 542 S.W.2d 175, 177 (Tex.Crim.App.1976).

Appellant admitted to the police she had spent the entire evening of the murders in the company of West. Thus, according to her own written statement wherever West was on that night so was appellant. The record is devoid of any testimony that suggests appellant went to the house unwillingly, went up the stairs unwillingly, stood beside the shooter unwillingly, or was in any way forced to participate in the murder of her parents. The only threat appellant spoke of to Gwen Sampson was that of being shot should she tell anyone of the murders. This threat was made after, not before, she accompanied West to the Campbell's residence and stood beside him after turning on the bedroom light, watching him kill her parents in the room with her own children.

The jury is the exclusive judge of the facts proved, of the credibility of the witnesses, and of the weight given their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App.1981). The trial judge gave the jury an instruction that required appellant's acquittal if they believed she was present at the murders under duress. The jury obviously rejected this theory by finding appellant guilty. Viewing the evidence from the record, we find it supports the jury's finding. *Wicker v. State*, 667 S.W.2d 137, 141 (Tex.Crim. App.1984).

Further testimony tending to connect the appellant with the commission of the crime came from her younger sister, Jamie Campbell. Jamie testified that almost two years before the murders, appellant stated to her that "we'd be better off without daddy" because then the girls could have "whatever we wanted." Appellant continued to discuss with Jamie how she would make his (James Campbell's) murder look like a man had done it by wearing heavy boots or shoes, leaving Marlboro cigarettes, using gloves, perhaps wearing a ski mask, and

walking around some window. Testimony indicated that this description, related by appellant to her younger sister two years before the murders, was similar to the events and circumstances surrounding the murders of the Campbells.

Another circumstance tending to connect the appellant with the murders of her parents was evidence that nothing was taken from the Campbells' house at the time of the killings, ruling out the possibility of robbery as a motive for the crime. Also, the record contains no evidence from which the jury could have inferred that West would have had any independent motive for the killing of the Campbells, other than from the persuasion and direction of their daughter, Cynthia Campbell Ray.

Finally, appellant's post-murder behavior of seeking the quickest possible inheritance settlement is another circumstance tending to independently connect her with the commission of the crime. Testimony disclosed appellant demonstrated greed and lack of remorse after her parents' funeral. These actions were consistent with the motive she had earlier expressed to her sister, Jamie. In fact, appellant is the only person who has received any settlement from her parents' estate, and she received this disbursement because she had been aggressively filing suit, making demands for her share. These post-murder actions of appellant provided the jury with further evidence tending to connect appellant with the murders of her parents.

Taking all of the testimony, circumstances, and inferences, and viewing the evidence in the light most favorable to the jury's verdict, the cumulative weight of the above described independent incriminating evidence is more than sufficient to corroborate the accomplice witness testimony of West. *Reed,* 744 S.W.2d at 128; *Gardner,* 730 S.W.2d at 679; *Brooks,* 686 S.W.2d at 958; *Hardesty,* 656 S.W.2d at 76; *Paulus,* 633 S.W.2d at 843; *Simmons,* 650 S.W.2d at 109. Appellant's first point of error is overruled.

In points of error two and three, appellant complains the trial court erred in ad-

mitting portions of two tape-recorded conversations between West and Kim Paris.

During the State's case in chief, West was called as a witness. West had been arrested by the Houston Police Department on February 21, 1985, as a result of incriminating statements made to Kim Paris, an employee of the Clyde Wilson Detective Agency. Paris arranged an introduction to West and pursued a relationship with him to secure incriminating evidence about the Campbells' murder. After Paris told West that their relationship would go no further without his "clearing the air about Cindy," West made incriminating statements over a two-day period. The conversations between West and Paris were recorded on five tapes by the Houston police. Portions of these tapes were introduced by the State during Paris' testimony to demonstrate prior consistent statements of West. That is, the State offered the tapes in an attempt to show that portions of West's testimony on direct examination, which the State argued had been impeached on cross-examination, were consistent with the prior statements he had made to Paris. The State maintains that while these statements were being taped, West had no motive to fabricate what he was saying to her. Appellant objected to the introduction of the tapes, arguing they constituted improper bolstering and hearsay.

Before we discuss the merits of appellant's points of error two and three, we will address the lack of preservation of such claimed error for review. We find that a variance exists between the objection made at trial and that made by appellant's counsel on appeal. An objection that is raised on appeal will not be considered if it varies from the objection made at trial. Tex.R.App.P. 52(a); *Pyles v. State,* 755 S.W.2d 98, 116 (Tex.Crim.App.1988); *Wagner v. State,* 687 S.W.2d 303, 306–7 (Tex. Crim.App.1984). The objection made by appellant's trial counsel during trial to the introduction of these tapes is as follows:

... and it would be my intention, Your Honor, in no way have I come close to opening the door to any of those possibilities such as an expressed or implied

charge of, or improper influence for a motive (sic). And for that reason, my position would be it would be hearsay, Your Honor.

Appellant's trial objection to the introduction of these tapes apparently was, since defense counsel had not attempted to impeach West, the state did not need to rehabilitate him through the use of prior consistent statements (the tape-recorded conversations between West and Paris). Thus, counsel argued, these tapes were not admissible under TEX.R.CRIM.EVID. 801(e)(1)(B).

On appeal, appellant now contends West always had a motive to lie, and thus, his prior consistent statements to Paris would never be admissible, no matter how completely West had been impeached. Appellant suggests to this court, for the first time, three possible motives West could have had to cause him to lie to Paris. Appellant may not now make such objection, having failed to make it in the trial court. TEX.R.APP.P. 52(a); *Pyles*, 755 S.W. 2d at 116. Having disavowed any objection as to improper motives at the time the consistent statement of West was made, the appellant has waived any complaint to admission of these tapes. The appellant's general objection to the tapes as hearsay does not allow appellant on appeal to create new specific reasons why these tapes are unreliable. TEX.R.APP.P. 52(a); *Sharp v. State*, 707 S.W.2d 611, 619 (Tex.Crim.App. 1986); *Pennington v. State*, 697 S.W.2d 387, 390 (Tex.Crim.App.1985); *Cravens v. State*, 687 S.W.2d 748, 752 (Tex.Crim.App. 1985). Appellant had ample opportunity to make these arguments to the trial judge, so that if any error was committed in admitting the tapes, that error could have been corrected at the trial level. *Almanza v. State*, 724 S.W.2d 805, 807 (Tex.Crim.App. 1986).

■ Even assuming that appellant preserved this error for review, we find the tapes are admissible under TEX.R.CRIM. EVID. 801(e)(1)(B). The determination of admissibility is within the sound discretion of the trial court, *Jackson v. State*, 575 S.W.2d 567, 570 (Tex.Crim.App.1979), and

will not be reversed on appeal unless a clear abuse of discretion is shown. *Werner v. State*, 711 S.W.2d 639, 643 (Tex. Crim.App.1986).

The trial judge properly admitted this evidence under the terms of TEX.R.CRIM. EVID. 801(e)(1)(B) which states:

> **(e) statements which are not hearsay.**
> A statement is not hearsay if:
>
> > (1) *prior statements by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive....

As previously stated, the tapes were introduced by the State to show that West's statements to Paris were consistent with his incriminating testimony at trial, and the State offered this evidence to rebut an express or implied charge against him of recent fabrication or improper influence or motive. The impropriety charged against West came during cross-examination. The trial judge affirmed this notion by the language he used in admitting the tape-recorded testimony into evidence.

> The court finds that based on the defense counsel's cross-examination of David West, the tenor and the drive and the thrust of the cross-examination was to suggest or accuse David West of lying, that he made that-that story falsely. That's it. And to gain something. No. Excuse me. That's it.

This court finds no abuse of discretion by the trial court's decision to admit these tapes into evidence and, thus, reversal is not mandated. *Werner*, 711 S.W.2d at 643.

■ Finally, we find appellant failed to meet her burden to show that West did, in fact, have a motive to lie to Paris, or that the testimony offered is bolstering or hearsay. *Beal v. State*, 520 S.W.2d 907, 911 (Tex.Crim.App.1975). The prosecutor specifically asked West if he had any idea he was about to be arrested or tried or endangered with the death penalty when making these incriminating statements to Paris.

He responded in the negative and continued to state he would not have any reason at that time to fabricate appellant's role in the murder of the Campbells. In fact, during his tape recorded conversation with Kim Paris, West not only made incriminating statements about appellant but also, incriminated himself.

We feel the facts in the present case are clearly distinguishable from those cited to this court by appellant. Appellant relies on *Campbell v. State*, 718 S.W.2d 712 (Tex. Crim.App.1986) and *United States v. Quinto*, 582 F.2d 224 (2d Cir.1978) for the proposition that a prior consistent statement is inadmissible, unless the State can prove there was no conceivable motive for the witness to have lied at the time of the prior consistent statement.

In *Campbell*, the Texas Court of Criminal Appeals held that where a witness received $400.00 from the Crime Stoppers Program a month and a half after her initial statement to the police concerning the alleged crime, her testimony was inadmissible since the receiving of this money implied that she had a motive to fabricate her testimony. 718 S.W.2d at 714. The *Campbell* court reversed the conviction and held that:

> the prior consistent statement about which the evidence was admitted were made at the time when the motive to fabricate the reward-money-existed.... Thus, those statements were not admissible as they were made after the very same motive that might have led her to fabricate on the witness stand had arisen —the receiving of the reward money. *Id.*

The record is devoid of any evidence showing West had any other motive to fabricate incriminating statements he made to Paris, linking himself and the appellant to the murders of the Campbells, except as he testified—to "clear the air about Cindy" in pursuing a relationship with Paris.

The *Quinto* facts are also distinguishable from the present case. In *Quinto* the Second Circuit stated that the same motive, a "ruthless desire to seek a conviction" of the defendant, was present both at the time

of the prior consistent statements and at the time of the trial. 582 F.2d at 234. There is no evidence in this record to lead one to believe that West sought to convict appellant or himself.

We find the facts in *United States v. DePeri*, 778 F.2d 963 (3rd Cir.1985), *cert. denied*, 475 U.S. 1110, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986), to be more closely aligned to those of the present case. In *DePeri*, the Third Circuit held:

> The record, fairly read, indicates that [the witness] addressed [the third party] as his former commanding officer, a co-conspirator, and had no idea that the conversation would be of any value to him in the future. That recorded statements are inculpatory, not exculpatory, evidences a lack of guilt that supports the interpretation that the conversation occurred before [the witness] decided to talk to the prosecutor. In sum, we cannot discern a motive to falsify arising, prior to the conversation, and therefore find no error in the courts admission of the tape.

778 F.2d at 977.

The trial court in *DePeri* allowed the tape-recorded testimony into evidence under Fed.R.Evid. 801(e). *See United States v. Decoito*, 764 F.2d 690, 694 (9th Cir.1985) (The 9th Circuit held that the prior consistent statement was admissible because it was made while the witness neither anticipated or feared prosecution at the time it was made.); *United States v. Feldman*, 711 F.2d 758, 766 (7th Cir.), *cert. denied*, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983) (The 7th Circuit held that since there was no evidence to show that, at the time of the prior statement, witness had the same motivation to lie that he did at trial, i.e., to receive favorable treatment by prosecutors, the statement was admissible.); *United States v. Provenzano*, 620 F.2d 985, 1001 (3rd Cir.1980); *United States v. Knuckles*, 581 F.2d 305, 313–14 (2nd Cir.), *cert. denied*, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978). In light of these cases, as well as other reasons we have previously stated, we find the trial court did not abuse its discretion in admitting the tapes

into evidence. *Jackson,* 575 S.W.2d at 570. Appellant's second and third points of error are overruled.

■ In appellant's fourth point of error she complains the trial court erred in preventing her from cross-examining West concerning two specific prior acts of violence. The exclusion of testimony is also within the trial court's discretion, *Jackson,* 575 S.W.2d at 570, and will not be reversed on appeal unless a clear abuse of discretion is shown. *Werner,* 711 S.W.2d at 639.

Appellant attempted to question West concerning two prior extraneous violent acts he allegedly committed. Appellant insists these two prior violent acts of West are admissible to rebut a false portrait painted by the State, that West is a peaceful man except when manipulated by appellant. In reviewing the record, we find that this was not the portrait painted by the State, and that West's testimony during cross-examination allowed the jury to infer that he had an overall violent past.

In addition, we find the trial court did not abuse its discretion in excluding this testimony because it is also inadmissible under TEX.R.CRIM.EVID. 608(b). This rule of evidence states:

**(b) Specific instances of Conduct.**
Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided by rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.

The two examples of West's prior violent acts are clearly inadmissible under this rule of evidence.

No constitutional rights of appellant have been violated, since appellant had no constitutional right to ask irrelevant or improper questions of a witness. *Allen v. State,* 700 S.W.2d 924, 930 (Tex.Crim.App. 1985). The trial court's action in excluding these prior extraneous offenses of West does not amount to an abuse of discretion and, thus, reversal is not mandated. *Jackson,* 575 S.W.2d at 570; *Werner,* 711 S.W. 2d at 639. *Carrillo v. State,* 591 S.W.2d

876, 887 (Tex.Crim.App.1979). Appellant's fourth point of error is overruled.

■ Appellant's fifth point of error argues the trial court committed fundamental error by including in the jury charge an instruction on the law of parole over her objections. TEX.CODE CRIM.PROC.ANN. 37.07 § 4 (Vernon Supp.1988).

The Court of Criminal Appeals recent decision on motion for rehearing in *Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App.1988), is controlling on this issue. *See also Fast v. State,* 755 S.W.2d 515 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). The *Rose* court held that because article 37.07 § 4(a) was unconstitutional for violation of the separation of powers and due process of law provisions of the Texas Constitution, it was void from its inception and therefore was not subject to waiver by appellant's failure to object. *Rose,* 755 S.W.2d at 553. Instead, the *Rose* court substituted the harmless error rule of TEX.R.APP.P. 81(b)(2) to review the error made by the judge in instructing the jury on the law of parole. Rule 81(b)(2) states,

if the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or punishment.

The charge here is similar to the charge used in *Rose.* In both cases the appellant was sentenced to the maximum punishment allowed, life confinement in the Texas Department of Corrections. The finding *Rose* had suffered no harm by the parole instruction appears to be based on two major points by the Court of Criminal Appeals: (1) The trial court in *Rose,* after reading the statutory parole instructions, gave an additional curative instruction to the jury; (2) the facts of the crime were "heinous." *Rose,* 752 S.W.2d at 554.

Applying the harm analysis of rule 81(b)(2) and the rationale of the *Rose* court to the facts of this case, we find the error committed by the trial court was harmless beyond a reasonable doubt. First, in addi-

tion to giving the parole instruction, the trial judge, as in *Rose*, stated further:

> You're not to discuss among yourselves how long the accused would be required to serve the sentence that you impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas, *and must not be considered by you.* (Emphasis added)

This is almost identical to the supplemental instruction given in *Rose*. In the present case, as well as in *Rose*, we must presume that the jury followed the trial judge's instructions. *Rose*, 752 S.W.2d at 554; *Cobarrubio v. State*, 675 S.W.2d 749, 752 (Tex.Crim.App.1983).

Furthermore, the facts of this case are at least as heinous as those in *Rose*. In *Rose*, the appellant and two companions entered the textile company where the victim was working, robbed him at gun point, and left him tied up on the floor after threatening to kill him. Eight days after the crime, Rose and his companion were seen by the Police in a sought after automobile. After a struggle with the occupants ensued, a gun was picked up by Rose's companion and Rose yelled "shoot him, shoot him", after which Rose's companion shot the police officer in the neck. Rose then escaped in a police car and was later caught after a high speed chase. *Rose*, 752 S.W.2d at 540. In the instant case, the record reflects appellant not only persuaded West to kill her parents, but she also planned and participated in this brutal case of patricide and matricide with her own children asleep at the foot of her parents' bed.

Even though appellant was a first time offender and eligible for parole, we find that the heinous facts of this case fully justified the jury in giving her a life sentence.

Appellant invites this court to adopt the dicta authored by Associate Justice Cohen in *Gabriel v. State*, 756 S.W.2d 68 (Tex. App.—Houston [1st Dist.] 1988, no pet.) (per se rule of reversal where a proper objection to the inclusion of the parole instruction is made). We decline this invitation, and, instead, follow the Texas Court of Criminal Appeals. Appellant's fifth point of error is overruled.

■ In her final point of error, appellant argues the trial court erred by including an affirmative finding of use of a deadly weapon by the appellant in its judgment. We agree and sustain this point of error. To correct this error, we order the judgment reformed to delete the affirmative finding of the use of a deadly weapon by the appellant, Cynthia Campbell Ray.

The authority for the trial court to enter a finding of an affirmative use of a deadly weapon comes from TEX.CRIM.PROC.CODE ANN. art. 42.12 § 3g(a)(2) which provides in pertinent part:

> Upon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense, or during immediate flight therefrom, the trial court shall enter the finding in the judgment of the court.

However, before this statute can be utilized, the Texas Court of Criminal Appeals has held that there must be a specific finding by the trier of fact that the defendant himself used or exhibited the deadly weapon. *Travelstead v. State*, 693 S.W.2d 400, 402 (Tex.Crim.App.1985). This conclusion has recently been reaffirmed by the Texas Court of Criminal Appeals in *Reyes v. State*, 741 S.W.2d 414, 432–33 (Tex.Crim. App.1987), and has been followed by this court in *Stevenson v. State*, 745 S.W.2d 45, 46 (Tex.App.—Houston [14th Dist.] 1987, no pet.), and *Gonzales v. State*, 697 S.W.2d 35, 38 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd).

If this court were writing on a blank slate, we would be inclined to follow the State's rationale in overruling appellant's point of error. The State presents persuasive, commonsense arguments that the person persuading the triggerman to pull the trigger should be held to the same amount of accountability and punishment as the triggerman. However, we are guided by standards laid down by the Court of Criminal Appeals.

In view of *Travelstead,* we must sustain appellant's point of error, and order the judgment of conviction reformed to delete any mention of the affirmative finding of use of a deadly weapon.

The judgment of the trial court is affirmed as reformed.