NO. 07-94-0317-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



NOVEMBER 29, 1995



______________________




DONNA GUDGELL, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE



_____________________




FROM THE 222ND JUDICIAL DISTRICT COURT OF DEAF SMITH COUNTY;



NO. CR-93J-149; HONORABLE DAVID WESLEY GULLEY, JUDGE



______________________




Before REYNOLDS, C.J., and DODSON and BOYD, JJ. 


 Upon a not guilty plea, appellant Donna Gudgell was convicted
of murder. The jury assessed her punishment at a $5,000 fine and
thirty-five years confinement in the Texas Department of Criminal
Justice, Institutional Division. In six points of error, appellant
contends (1) the trial court erred in adding an affirmative finding
to the judgment that she used a deadly weapon during the commission
of the offense; (2) the trial court erred in admitting a hearsay
statement of the accomplice witness as a prior consistent statement; (3) the trial court erred in admitting her transcribed
oral confession because there was no proper predicate for its 
admission; (4) the evidence was insufficient to corroborate the
accomplice witness testimony; (5) the trial court erred in denying
admission of an oral statement made by the District Attorney's
Investigator, Arthur Gerringer to appellant's daughter; and (6) the
trial court erred in admitting her transcribed oral confession
because it was involuntary. We affirm. 


 For logical continuity, we will review the points of error out
of their numerical sequence. In point of error two, appellant
contends the trial court erred in admitting a hearsay statement of
the accomplice witness as a prior consistent statement. We
disagree.

 The record shows that the deceased was appellant's husband,
Bill Gudgell. They resided on a farm in a rural area of Deaf Smith
County and had several children, Greg, Todd, Gwenna and Terri. 
Accomplice witness Chris Barron, who had resided with the Gudgells
for several years as a foster child and farm worker, confessed to
killing the deceased. Barron and appellant both testified that
they had an affair for about seven years. Barron also had an
affair with their daughter, Gwenna, in 1993.

 Barron gave six recorded statements to various authorities
prior to trial. Some of the first five statements were
inconsistent with Barron's trial testimony as to appellant's
involvement in Bill's murder. However, the sixth statement,
State's exhibit 17, was consistent with Barron's trial testimony. 
In State's exhibit 17, Barron reported that appellant was a party
to Bill's death by promoting, encouraging, planning and aiding him
to commit the murder.

 Barron testified at trial that on September 11, 1993, he and
appellant were at the Gudgell home. Appellant told Barron she was
unhappy with her husband's treatment of her, and she would be happy
if Bill was gone, a theme she had repeated previously. Appellant
decided that she would turn on the barn light so when Bill returned
home, Bill would go to the barn to turn the switch off. Appellant
wanted Barron to shoot Bill when he went to turn off the light and
before Bill entered their home.

 As appellant and Barron made their plans, Bill was at a rodeo
with Gwenna's children. Appellant and Barron believed Bill would
be returning his grandchildren to Gwenna's house, so Barron
telephoned Gwenna to determine when Bill was leaving her home and
whether the grandchildren would be with him when he arrived at the
Gudgell house. Gwenna notified Barron when Bill left her house for
the Gudgell home.

 When Bill arrived at the Gudgell home, he went to the barn to
turn off the light. Although Barron was waiting with a gun to
shoot Bill, Barron was emotionally unable to accomplish his task. 
Barron then returned to his room in the Gudgell house. Shortly
thereafter, appellant came to Barron's room and asked him about
what had happened. Barron explained that he was unable to murder
Bill. Appellant told Barron that he would have to kill Bill that
day. 


 Barron then went back outside and shot through a window in the
house and killed Bill, who was sitting inside the house at the
kitchen table. After the deed was done, Barron went back inside
the Gudgell house, and appellant agreed to give him five minutes to
leave the house before she called 911.

 Barron was cross-examined about his plea bargain with the
State, which occurred about a week before appellant's trial. 
Barron agreed to testify against appellant in return for a thirty-five year sentence for Bill's murder. 

 After Barron was cross-examined by appellant's counsel, the
State attempted to introduce State's exhibit 17 to establish that
Barron's trial testimony was consistent with his sixth recorded
statement, which was made to the District Attorney's investigator,
Arthur Gerringer. Appellant objected on the grounds that the sixth
statement was hearsay, inadmissible, and violated Rule "608." (1) In
making the objection, appellant referred to Rule "608" as the rule
the prosecutor had earlier quoted in objecting to two of Barron's
first five statements in which appellant was not implicated. 
Appellant, however, was mistaken because the State had actually
objected to the introduction of these two defense exhibits on the
ground that Rule "612" prohibited their admission. The State had
contended that since Barron had unequivocally admitted making the
prior inconsistent statements while testifying at the instant
trial, appellant was not entitled under Rule "612" to have those
prior inconsistent transcriptions also admitted.

 In explaining the State's position regarding State's exhibit
17, the prosecutor stated that Barron's prior consistent statement
was admissible under Rules 612(c) and 801(e)(1)(B). Without
further objection on any additional ground by appellant, the trial
court admitted State's exhibit 17. Soon thereafter, upon defense
counsel's request, the trial court admitted the five other
transcriptions of Barron's tape recorded statements, which were
made prior to State's exhibit 17, some of which denied any
involvement by appellant.

 A prior statement by a witness which is consistent with his
trial testimony is generally inadmissible. Tex. R. Crim. Evid.
612(c). However, a prior consistent statement is admissible and
not hearsay only if (1) offered to rebut an implied or express
charge against a witness of recent fabrication or improper motive
or influence, and (2) the consistent statement is made before the
inducement or motive to fabricate existed. Campbell v. State, 718
S.W.2d 712, 715 (Tex.Cr.App. 1986).

 An objection on the ground of "hearsay" is generally
sufficient to preserve error. Lankston v. State, 827 S.W.2d 907,
910 (Tex.Cr.App. 1992). However, when there is nothing to
establish that the accused was objecting because the prior
consistent statements were made after the motive to fabricate had
arisen, the objection is insufficient and nothing is preserved for
review. Meyers v. State, 865 S.W.2d 523, 524-25 (Tex.App.--Houston
[14th Dist.] 1993, pet. ref'd); Ray v. State, 764 S.W.2d 406, 410-11 (Tex.App.--Houston [14th Dist.] 1988, pet. ref'd.). This is so 
because there is nothing to place the trial court on notice that
the prior consistent statement was objectionable on the ground it
was made after a motive to fabricate existed. Id.; Accord Hulin v.
State, 438 S.W.2d 551, 552 (Tex.Cr.App. 1969).

 Here, appellant objected on the grounds that the transcription
of the interview was hearsay and inadmissible. As modified by
appellant's statement incorporating the prosecutor's former
objection, appellant actually objected on the ground that the
transcript's admission violated Rule "612" about prior inconsistent
testimony. Under these circumstances, appellant's objections were
inadequate to notify the trial court that Barron's transcribed
interview occurred after Barron had a motive to fabricate the
challenged statement. Moreover, nothing is preserved for review
because appellant's three trial objections do not comport to his
appellate objection that Barron had a motive to fabricate his prior
consistent statement. Cravens v. State, 687 S.W.2d 748, 752
(Tex.Cr.App. 1985); Hulin v. State, 438 S.W.2d at 552. 
Consequently, point of error two is overruled.


 In point of error four, appellant contends the evidence is
insufficient to corroborate the accomplice witness testimony. We
disagree. 


 The Texas Code of Criminal Procedure Annotated article 38.14
provides:

 A conviction cannot be had upon the testimony of an
accomplice unless corroborated by other evidence tending
to connect the defendant with the offense committed; and
the corroboration is not sufficient if it merely shows
the commission of the offense.

To determine the sufficiency of the corroboration, we must
eliminate from consideration the testimony of the accomplice
witness and then examine the remaining evidence to ascertain if it
tends to connect the defendant with the commission of the offense. 
Reed v. State, 744 S.W.2d 112, 125 (Tex.Cr.App. 1988). 


 It is not necessary that the corroboration directly link the
accused to the crime or that it be sufficient in itself to
establish guilt. Reynolds v. State, 489 S.W.2d 866, 872
(Tex.Cr.App. 1972). Independent evidence which generally tends to
establish that an accomplice witness's version of the facts is
correct, rather than the version given by the defendant, is
considered corroborative, even if it concerns only a detail, as
opposed to a substantive link between the defendant and the
commission of the offense. Beathard v. State, 767 S.W.2d 423, 430
(Tex.Cr.App. 1989). Even apparently insignificant circumstances
sometimes afford satisfactory corroboration. Munoz v. State, 853
S.W.2d 558, 559 (Tex.Cr.App. 1993). The presence of the accused
with the accomplice at or near the crime scene, when coupled with
other circumstances, can be sufficient to corroborate the
accomplice witness's testimony. Ayala v. State, 511 S.W.2d 284,
287 (Tex.Cr.App. 1974). 


 Here, after excluding all the evidence introduced through
Barron, there is evidence that (1) appellant was present in the
house when Bill was murdered; (2) she was having an affair with
Barron; (3) Bill treated her like dirt and she wanted a new life;
(4) appellant was calm after emergency medical personnel arrived at
the crime scene, even offering one person refreshments; (5)
appellant lied to the officers and her family about not knowing who
killed Bill; (6) appellant wanted Bill "gone" or out of her life;
(7) she had talked with others about being "free" from Bill; and
(8) on one occasion, wished that Bill was dead and talked about
making Bill's death look like an accident. In appellant's
statement to Gerringer or in her trial testimony, (1) appellant
admitted that she saw Barron holding a rifle just after Bill was
shot and just before Barron left the Gudgell house; (2) she and
Barron talked about killing Bill that day; (3) she did not believe
Barron would kill Bill; (4) she stayed with Barron much of the day
that Bill was murdered; (5) she had probably said something to the
effect that after Bill was dead, she and Barron would run the farm;
(6) she acknowledged that she discussed with Barron that she would
be in the bathroom when Bill got home and the "deed was gonna get
done"; (7) she earlier decided that Bill was not going to be shot
after he entered their home; (8) after the shooting, she told
Barron she would give him five minutes to travel to Gwenna's house
before notifying the authorities; (9) she acknowledged that she
"guess[ed]" she and Barron planned the "particulars about what
happened before [the murder]" but she did not "mean to be
planning"; (10) she said that Barron had talked to Barron's
stepfather about getting someone else to kill Bill; (11) she "went
along with [Barron's] ideas"; (12) she possibly intended to be with
Barron "[s]omeday . . . after everything died down"; (13) she knew
Barron "was going to take a shot at" Bill; and (14) she "guess[ed]"
she wanted Bill dead. Under these circumstances, Barron's
testimony was sufficiently corroborated by non-accomplice evidence
connecting appellant as a party with the murder of the deceased. 
Point of error four is overruled. 


 In point of error five, appellant contends the trial court
erred in denying admission of a statement made by Gerringer to
Gwenna during Gerringer's interview with Gwenna about the
deceased's death. We disagree.

 During cross-examination, appellant asked Gwenna about her
interview with Gerringer regarding the murder. In this regard, the
record shows:

 Q. [BY DEFENSE COUNSEL]: So when you walked
in . . . Gerringer's office, what happened? What
transpired?


 A. Well, I told him that I didn't believe [Barron]
had done it.


 Q. Did [Gerringer] get mad at you?


 A. [Gerringer] told me in a very harsh voice that
he had been an investigator for over 25 years and that he
had no doubt that [Barron] was guilty.


 Q. Did he start talking to you -- Did he say that
he had been told by a lot of people that you hated your
father [the deceased]?


 A. Yes.


 Q. Did he say that you knew [Barron] was going to
kill your father?


 [THE PROSECUTOR]: Your Honor --


 A. Yes.


 [THE PROSECUTOR]: -- I am going to object
to that as hearsay.


 THE COURT: Sustained.

 Subsequently, appellant made the following offer of proof
regarding Gwenna's testimony: 

 Q. [BY DEFENSE COUNSEL]: Okay. In any event,
[Gwenna] you had a conversation with . . . Gerringer,
right?


 A. Yes, I did.


 Q. Did he accuse you of participating in your
father's death?


 A. [Gerringer] informed me that he knew I knew
about it.


 Q. And did [Gerringer] say that you knew [Barron]
was going to kill your daddy?


 A. Exactly.


 Q. Did [Gerringer] say that he had been told by a
lot of people that you hated your father?


 A. Yes, he did.


 Q. Did [Gerringer] essentially try to say that you
were a guilty party?


 A. Yes, he did.


 Q. Now, was there a tape recording going when this
occurred?


 A. Not that I knew of.


 [DEFENSE COUNSEL]: Your Honor, that is
all that we have.

 Where the trial court excludes testimony sought to be admitted
by the defense and admits essentially the same evidence elsewhere,
the error is cured even if the exclusion was error. Gonzales v.
State, 571 S.W.2d 11, 13 (Tex.Cr.App. 1978). Here, the trial court
sustained the State's hearsay objection to the question about
whether Gerringer accused Gwenna of knowing that Barron was going
to kill the deceased. However, Gwenna answered the question
affirmatively before the objection was sustained, and there was no
instruction to disregard or strike the statement from the record. 
Hence, (1) the evidence underlying appellant's offer of proof was
actually already admitted before the jury prior to the trial
court's ruling, and (2) the jury could have properly considered the
unstricken testimony. Hence, the admission of essentially the same
evidence cured any error.

 For the first time on appeal, appellant contends that Rule
801(e)(2)(D) provides the basis for admission of Gwenna's excluded
testimony about Gerringer's statements. However, we find the error
was harmless beyond a reasonable doubt because (1) Gwenna's
testimony on the issue was tenuous as to Gerringer's bias or
appellant's guilt, (2) cumulative of other testimony already given
by her, (3) the examination of Gwenna and Barron by the defense was
relatively unrestricted, and (4) appellant tacitly admitted to
guilt in her tape recorded confession. Tex. R. App. P. 81(b)(2);
Shelby v. State, 819 S.W.2d 544, 546-47 (Tex.Cr.App. 1991).

 Appellant also objects for the first time on appeal that the
exclusion of the evidence deprived her of her rights to a fair
trial under the 5th, 6th, and 14th Amendments to the United States
Constitution and Article I, sections 10 and 19 of the Texas
Constitution. Since these objections are raised for the first time
on appeal, nothing is preserved for review. Gauldin v. State, 683
S.W.2d at 413. Consequently, point of error five is overruled.

 By her third and sixth points of error, the appellant
challenges the trial court's admission of a tape recording of an
oral confession and interview with Officer Gerringer. First, we
will address the sixth point by which she asserts the trial court
erred by admitting her tape recorded oral interview with Gerringer
claiming her confession was involuntary. 

 The determination of whether an accused knowingly and
voluntarily waived his rights is based on the totality of the
circumstances surrounding the statement's execution. Ingham v.
State, 679 S.W.2d 503, 509 (Tex.Cr.App. 1984). In order for a
promise to render a confession involuntary, the promise must be
shown to be: (1) of some benefit to appellant, (2) positive, (3)
made or authorized by one in authority, and (4) of such a nature as
would be likely to influence the confessing party to report
untruthful facts. Sossamon v. State, 816 S.W.2d 340, 345-46
(Tex.Cr.App. 1991). To establish the forth prong, the reviewing
court must look to whether the promise induced the accused to admit
to a crime that was not actually committed by the individual. Id. 
 In this regard, we review some analogous cases. The following
are promises not likely to induce a defendant to speak
untruthfully: (1) a statement by an officer that certain
individuals would not be arrested if they were not involved in the
burglary or murder was not a promise likely to cause the defendant
to untruthfully admit to a murder offense, Salazar v. State, 687
S.W.2d 502, 503-04 (Tex.App.--Dallas 1985, pet'n ref'd); (2)
statements from the prosecutor (a) asking the defendant to give his
version so things could be straightened out, and (b) telling the
defendant that he could probably go home thereafter, was not an
incentive for the defendant to untruthfully confess to murder,
Alvarez v. State, 649 S.W.2d 613, 620-21 (Tex.Cr.App. 1982), cert.
denied, 464 US 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983); (3)
unspecific offers to help a defendant are not likely to cause the
suspect to make an untruthful statement, Dykes v. State, 657 S.W.2d
796, 797 (Tex.Cr.App. 1983); (4) offer to help wife and mother of
defendant with charitable aid was not sufficient to induce suspect
to confess to heinous crime, accord Muniz v. State, 851 S.W.2d 238,
253-54 (Tex.Cr.App.), cert. denied, 114 S.Ct. 116, 126 L.Ed.2d 82
(1993); and (5) a promise to the defendant that he would be allowed
to see his girlfriend was not likely to induce an untruthful
statement on his part. Smith v. State, 779 S.W.2d 417, 427
(Tex.Cr.App. 1989). 


 Here, appellant acknowledged on the tape recording that she
knew and understood her statutory warnings. Gerringer advised
appellant that she would not be arrested the day she talked to him. 
When appellant specifically asked if she would be arrested that
night or the next day, Gerringer informed appellant that she would
not necessarily be arrested but it depended on what she told him
after she had received the warnings about her rights. Gerringer
promised appellant that she would not be arrested that day. 
However, Gerringer also explained that any arrest would depend on
the information that she gave to him afterwards. Gerringer
explained that the prosecutor would make a decision regarding
whether she had some culpability in Bill's murder. Under the
totality of these circumstances, the promise not to arrest
appellant the day of her interview did not likely induce appellant
to speak untruthfully and tacitly admit to aiding Barron in
murdering Bill. Point of error six is overruled. 

 In point of error three, appellant contends the trial court
erred in admitting a tape recording of her oral confession when
there was no proper predicate for its admission. We disagree. 


 Gerringer interviewed appellant in his office on September 30,
1993. Gerringer said that appellant was a witness to the instant
offense, came into his office voluntarily, and initially discussed
the circumstances surrounding her husband's murder freely. When
appellant made an incriminating statement during the interview,
Gerringer stopped the interview and gave appellant verbal warnings
and had her sign a written waiver of her rights. Appellant never
signed a written confession.

 Gerringer initially attempted to record the interview with
appellant by using a recorder capable of recording from a standard
sized cassette tape. After the first fifteen to twenty minutes of
the interview elapsed, Gerringer noticed that the recorder was not
recording the interview with appellant. Gerringer then switched to
a micro-cassette tape recorder and recorded the remainder of the
interview. The micro-cassette tape contained about an hour and
forty-five minutes of his interview with appellant. 


 Gerringer acknowledged that (1) he was competent to record the
conversation and operate the micro-cassette recorder, (2) he had
subsequently listened to the tape and was certain that the taped
confession was accurate, (3) he had the taped conversation
transcribed, (4) the transcription was an accurate reflection of
the interview with appellant, (5) there had been no alterations or
changes to the tape, (6) the tape was maintained in the District
Attorney's offices since appellant's interview, and (7) no one
tampered with the tape. Gerringer identified his and appellant's
voices as those on the tape.

 Appellant objected because the tape had about a twenty minute
gap since the first recorder did not function properly, and
Gerringer "could" have made an offer of immunity during this gap. 
Soon thereafter, the trial court admitted the tape's transcription
into evidence.


 Rule 901(a) provides that when identification or
authentication of evidence is necessary, the requirement for
admissibility is met by evidence adequate to support a finding that
the matter is what its proponent claims. Kephart v. State, 875
S.W.2d 319, 321 (Tex.Cr.App. 1994). The adoption of the Rule
901(a) superseded the seven prong test for the admissibility of
sound recordings set forth in Edwards v. State, 551 S.W.2d 731, 733
(Tex.Cr.App. 1977). Leos v. State, 883 S.W.2d 209, 211
(Tex.Cr.App. 1994).


 Here, Gerringer identified his and appellant's voices on the
tape recording and said the recording was an accurate recording of
their conversation. Under these circumstances, there was evidence
that the challenged transcription was what the State claimed, and
the transcription was relevant in that appellant's statements
connected her to the offense. Additionally, minor gaps in audio
recordings that are a result of accidental or technical problems
that are sufficiently explained do not affect the trustworthiness
and reliability of the evidence, nor render the tapes inadmissible. 
Ali v. State, 742 S.W.2d 749, 754-55 (Tex.App.--Dallas 1987, pet.
ref'd)(electrical short causing recorder to "short out" did not
render tape inadmissible); Gahl v. State, 721 S.W.2d 888, 896-97
(Tex.App.--Dallas 1986, pet. ref'd) (a jammed tape resulting in
three to five minute gap did not render recording inadmissible);
McEntyre v. State, 717 S.W.2d 140, 145-47 (Tex.App.--Houston [1st
Dist.] 1986, pet. ref'd) (frequent interference caused by
interruption from police radios and a seven minute gap in the tape
recording did not render recording inadmissible). 


 On appeal, appellant also contends that (1) since the first
device quit working, it was not capable of making a recording, (2)
Gerringer failed to notice that the device was not working so he
was incompetent to operate the equipment, and (3) her statement was
induced by Gerringer's promise not to arrest her. With regard to
the first two contentions, nothing is preserved for review since
these appellate contentions do not comport with the objection made
at trial, Cravens v. State, 687 S.W.2d at 752, and these appellate
objections are raised for the first time on appeal. Gauldin v.
State, 683 S.W.2d at 413. With regard to the third claim, we have
previously determined in our resolution of point of error six, that
the confession was not involuntary because the promise made by
Gerringer that appellant would not be arrested on the day of her
interview was not likely to induce appellant into making an
untruthful statement tacitly admitting involvement in Bill's death. 
Consequently, point of error three is overruled. 


 In point of error one, appellant contends the trial court
erred in adding an affirmative finding to the judgment that she
used a deadly weapon during the commission of the offense. We
disagree.


 If a party attempts to invite the court to make an erroneous
ruling, and the court rules in accord with the request, the accused
cannot complain of that error on appeal. Tucker v. State, 771
S.W.2d 523, 534 (Tex.Cr.App. 1988); Capistran v. State, 759 S.W.2d
121, 124 (Tex.Cr.App. 1982). The correct time to submit a special
issue concerning the use of a deadly weapon is at the punishment
stage of trial. Luken v. State, 780 S.W.2d 264, 268-69
(Tex.Cr.App. 1989).

 Here, the punishment charge did not include a deadly weapon
special issue. Appellant expressly stated that she had no
objections to the jury charge. Soon thereafter, the prosecutor
stated that it was his understanding that if the jury found
appellant guilty as charged in the indictment, the trial judge was
authorized to find that a deadly weapon was used in the instant
offense. Defense counsel agreed with the prosecutor's expression
of the law. The trial judge then declared that he would make the
deadly weapon finding. Because appellant complains of error she
invited the trial court to make, nothing is preserved for review. 
Consequently, point of error one is overruled. 


 Accordingly, the judgment is affirmed.


 Carlton B. Dodson

 Justice

Do not publish. Tex. R. App. P. 90(c).
1. All references to the Rules are the Texas Rules of Criminal
Evidence.