# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00129-CR

**Timothy Franks, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. 3032462, HONORABLE DON LEONARD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Timothy Franks of murder. *See* Tex. Penal Code Ann. § 19.02(b)(1) (West 2003). Punishment was assessed at 99 years' imprisonment. Franks asserts that the trial court erred by (1) admitting into evidence a videotaped witness statement and (2) failing to instruct the jury that it could convict him of the lesser-included offense of involuntary manslaughter. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 25, 1994, Carol Harris was fatally shot in her home. Crime-scene analysis indicated that someone fired twelve shots through the front of the house. Further analysis indicated that the shooter started firing while standing on the front porch and continued firing while retreating from the porch into the front yard and toward the street.

Police initially questioned Harris's relatives and neighbors. A neighbor told police that she had seen a car belonging to one Paul Mannie driving around the neighborhood shortly before Harris was shot. Police subsequently questioned Paul Mannie about the incident and also questioned Ronald Cypress, one of Mannie's friends. Both men admitted that they had been driving around the neighborhood together in Mannie's car the night Harris was shot, but they told police that they knew nothing about the shooting. They also told police that one Andrew Johnson had been in the car with them and had been sleeping in the back seat. Andrew Johnson told police the same. With no further leads, Harris's murder went unsolved for more than nine years.

In 2003, Ronald Cypress called the Texas Department of Corrections tip hotline to report that he had information about Harris's murder. Police interviewed Cypress, who told them that he had lied in his previous interview; Timothy Franks, not Andrew Johnson, had been driving around with him and Mannie the night Harris was murdered. Cypress gave police additional information that they believed implicated Franks in Harris's murder.

Police then re-interviewed Paul Mannie. They videotaped the interview, which lasted for approximately five hours. Mannie initially repeated his story from 1994, saying that he knew nothing about Harris's murder and had been driving around the night of the murder with Cypress and Johnson. After police offered Mannie immunity and told him that they knew about Franks, however, Mannie changed his story to one more consistent with Cypress's revised version of events.

After further investigation, the State charged Franks with Harris's murder. At trial, the State called Mannie as a witness. Mannie offered testimony largely consistent with the incriminating statements he had given police in 2003. On cross-examination, Mannie admitted that

2

he had made those statements only after police offered him immunity and told him that they knew about Franks. Franks's attorney suggested that Mannie had tailored his statements during his 2003 interview to fit the story the police wanted to hear.

On redirect examination, the State's attorney offered to introduce the videotape of Mannie's 2003 interview into evidence. Franks's attorney asked that a transcript of the interview be introduced into evidence as well. The State resisted because the transcript had not been certified as accurate by a court reporter. After an off-the-record discussion, the trial court admitted the videotape over Franks's objection. It also admitted the transcript for in-court review only. The State introduced the entire videotape into evidence and played certain parts of it for the jury.

At the trial's end, the court instructed the jury on the murder charge. It did not instruct the jury that it could convict Franks of the lesser-included offense of involuntary manslaughter. Franks neither requested such an instruction nor objected to the jury charge as submitted.

The jury convicted Franks of murder. Franks appealed, contending that the trial court (1) should not have admitted the videotape of Mannie's interview and (2) should have instructed the jury that it could convict Franks of the lesser-included charge of involuntary manslaughter.

## STANDARD OF REVIEW

We review trial court rulings on the admissibility of evidence for abuse of discretion. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). We will uphold a trial court's determination on the admissibility of evidence if it is reasonably supported by the record and correct under any applicable legal theory. *Id*.

3

Where a defendant does not object to the formulation of a jury charge, the formulation of the charge is grounds for reversal only if it represents fundamental error and caused the defendant egregious harm. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

## DISCUSSION

*Admission of Mannie's Videotaped Interview*

Franks argues that the trial court erred in admitting the videotape of Mannie's 2003 police interview. After the State offered the tape into evidence, the following discussion occurred:

> THE COURT: Let's get this on the record. State has offered the videotape of this witness' [sic] statement, and he [defense counsel] is objecting.
>
> DEFENSE COUNSEL: I am objecting.
>
> THE COURT: And I am going to admit it, and I assume you [the State] want to offer it on, you said, on the record, that you are offering it because [defense counsel] said it was the police's answers [that Mannie recited], and it's both past —
>
> PROSECUTOR: Prior consistent statement.
>
> THE COURT: Prior consistent, and in some respects prior inconsistent, so I am going to admit it on those three grounds.
>
> DEFENSE COUNSEL: My objection would be that it's not admissible as a prior consistent statement . . . .

On appeal, Franks argues that the videotape was not admissible as a prior consistent statement or prior inconsistent statement. *See* Tex. R. Evid. 613(a), 801(e)(1)(B). We can assume without deciding that Franks is correct, even though he failed to raise the latter objection at trial and raised

4

the former with arguably insufficient specificity,[1] because the videotape was admissible for at least two other reasons. *See Carrasco*, 154 S.W.3d at 129 (appellate court will uphold trial court's determination on admissibility of evidence if reasonably supported by record and correct under any applicable legal theory).

First, the videotape was admissible to rebut the suggestion that the police fed Mannie his answers to their questions. *See Graves v. State*, 176 S.W.3d 422, 430 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd) (where "defense counsel introduced specifics as to the context of the videotape on cross-examination and questioned the propriety of the interviewer's technique," door was opened to admission of the tape as evidence by State). Defense counsel repeatedly tried to get Mannie to admit that he molded his story on the videotape to accord with what the police wanted to hear.[2] Thus, even if the videotape was not admissible to prove the truth of Mannie's videotaped

---

[1] Though Franks objected generally that the videotape was inadmissible as a prior consistent statement, he did not object specifically (as he does on appeal) that Mannie's motive to fabricate arose before Mannie made the statements on the videotape that incriminated Franks. *See Hammons v. State*, 239 S.W.3d 798, 804 (Tex. Crim. App. 2007) (to be admissible, prior consistent statement must have been made before motive to fabricate arose); *Bolden v. State*, 967 S.W.2d 895, 899 (Tex. App.—Fort Worth 1998, pet. ref'd) ("In order to complain on appeal that a prior statement is inadmissible because it does not predate the motive to fabricate, an appellant must have objected on that basis to the trial court.").

[2] The following questions posed by defense counsel to Mannie are illustrative:

Q: And [the police] were telling you [during the videotaped interview] what the truth was—that [Andrew Johnson] wasn't in the car and that they knew that Tim Franks was in the car; that's the truth they wanted to hear from you, isn't it, Mr. Mannie?

Q: You resist their statements . . . until this idea of immunity comes up. And the officers make it clear, do they not, . . . that you will not get in any, any trouble . . . if you tell their truth . . . ; fair statement?

Q: Every place in this [videotaped] statement that the authorities indicate they have

statements, it was admissible to show that Mannie was not simply parroting what the police told him. *See* Tex. R. Evid. 801(d) (statement not hearsay if not offered to prove truth of matter asserted). The trial court stated that this was one of the three reasons why it admitted the videotape, and Franks neither objected nor sought a limiting instruction. The jury was therefore free to consider the tape's contents for any purpose. *See* Tex. R. Evid. 105(a) ("When evidence which is admissible . . . for one purpose but not admissible . . . for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but, in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal.").

Second, during cross-examination, defense counsel intensively questioned Mannie about his videotaped statements. The videotape was therefore admissible on redirect to clarify what Mannie actually said. *See* Tex. R. Evid. 107; *Credille v. State*, 925 S.W.2d 112, 116-17 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) ("[B]ecause appellant inquired into the videotaped conversation . . . , [under Rule 107] the State was entitled to offer any other evidence [e.g., the videotape itself] that was necessary to make the conversation fully understood."). Franks argues that even if Mannie's statements on the tape were admissible, the police's statements on the tape were not. Franks did not raise this argument at trial—in fact, at trial he advocated introducing the tape in its entirety—but even if he had, all parts of a videotaped conversation that are necessary for clarification are admissible under rule of evidence 107. *See id*. at 117; *Walters v. State*, 247 S.W.3d

---

some difficulty or they want you to clarify something, your story adjusts a little bit, it gets a little more detailed; is that a fair statement, Mr. Mannie?

6

204, 217-18 (Tex. Crim. App. 2007) (Rule 107 "permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter 'opened up' by the adverse party."). We overrule Franks's first issue.

### *Jury Instruction on Lesser-Included Offense*

Franks argues that the trial court erred by not instructing the jury that it could convict him of the lesser-included offense of involuntary manslaughter. Franks did not request such an instruction and did not object to the jury charge as submitted. He argues that this was because if he had done so and been convicted of involuntary manslaughter, he would have been estopped from appealing on the basis of evidentiary insufficiency. *See State v. Lee*, 818 S.W.2d 778, 781 (Tex. Crim. App. 1991) (by requesting or not objecting to lesser-included-offense instruction at trial, defendants are estopped from complaining on appeal that evidence failed to establish all elements of lesser offense), *overruled in relevant part by McKinney v. State*, 207 S.W.3d 366, 374 (Tex. Crim. App. 2006). Because the law put him in this "fundamentally unfair and irrational" position, he argues, we should not apply an "egregious harm" standard of review to the jury charge. *See Almanza*, 686 S.W.2d at 171 (if accused does not object to error in jury charge, that error is reversible only if it is "so egregious and creates such harm that it deprives the accused of a 'fair and impartial trial'"). Rather, he argues, we should act as though he preserved error and reverse his conviction unless the error was harmless. *See id.* (jury-charge error properly preserved by objection requires reversal "as long as the error is not harmless").

A trial judge has a duty to prepare a jury charge that properly sets forth the law applicable to the case, and failure to do so may represent reversible error. *See Delgado v. State*,

7

235 S.W.3d 244, 249 (Tex. Crim. App. 2007) . There is no similar duty to instruct the jury on lesser-included offenses or defensive issues, however, as these issues involve strategic decisions by the parties. *Id*. at 249-50. Therefore, contrary to Franks's argument, the trial court did not err in failing to instruct the jury on involuntary manslaughter. Franks did not request such an instruction, so he may not now complain about the absence of one. *Id*. at 250 ("[T]he defense may not claim error successfully on appeal due to the omission of a lesser included offense if the defense refrained from requesting one.") (citation and quotation omitted). We overrule Franks's second issue.

## CONCLUSION

For the reasons stated above, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed: April 28, 2010

Do Not Publish

8