**Michael Lamont BOLDEN, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–96–587–CR.**

Court of Appeals of Texas, Fort Worth.

April 16, 1998.

---

Casey & Colosi, Terry M. Casey, Fort Worth (On Appeal Only), for Appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Assistant and Chief of the Appellate Division, David M. Curl, Lisa Mullen, Eleanor Barnwell, Assistants, Fort Worth, for Appellee.

Before CAYCE, C.J., and LIVINGSTON and BRIGHAM, JJ.

## OPINION

CAYCE, Chief Justice.

Michael Lamont Bolden was convicted of murder and sentenced to 99 years' confinement in the Institutional Division of the Texas Department of Criminal Justice. In four points, he contends the trial court improperly admitted the prior consistent statement of a State's witness and erred in failing to grant his motion for mistrial based upon improper jury argument. We will affirm.

Because appellant does not challenge the sufficiency of the evidence to support his conviction, we will address the facts only as applicable to each point raised.

Appellant, a "Crips" gang member, was convicted for the October 14, 1994 murder of Larry Davis, a "Bloods" gang member. In his first three points, he contests the admissibility of a written statement given by State's witness, Michael Martin, on November 15, 1994—five days after appellant spoke with Martin at the Tarrant County Jail. Martin was incarcerated for robbery by threat.

During its case in chief, the State called Martin to testify about the conversation he had with appellant on November 10, 1994. Martin testified that appellant told him that he "put the pop down on some snoops in Meadowbrook." "Snoop" is Crip slang for Bloods gang members; "putting the pop" on someone means to shoot them. Martin also testified that appellant said that he gave the murder weapon to DeAngelo Bell, another Crips gang member, and that the police found the weapon in Bell's possession and that Bell was "snitching on him." According to Martin, appellant wanted Bell to be quiet

and to tell the police that he got the weapon on the street, not from appellant.

Martin testified that the first time he met with prosecutors about this case was the week before the trial, which began on August 20, 1996. He stated that during this meeting the prosecutor agreed to write a letter on his behalf to the parole board. Anticipating defense counsel's intent to impeach Martin, the State asked Martin about his written statement, the meeting, the letter, and why he agreed to testify:

[STATE:] What does it mean to you to be here testifying today?

[MARTIN:] Well, basically, it's just— you know, at some point in your life, you know, it's time you got to do something right and quit doing—you know, quit taking from the community all the time and give something back to them. I feel like that I'm giving something back.

. . . .

[STATE:] Mr. Martin, did you give a statement in this case?

[MARTIN:] Yes, ma'am.

[STATE:] When did you make that statement?

[MARTIN:] I think it was in November, around 10th, 11th, somewhere around in there.

[STATE:] November of what year?

[MARTIN:] Of '94.

[STATE:] At that time had you met either Ms. Mullen or myself?

[MARTIN:] No, ma'am.

[STATE:] When was the first time that you met either one of us?

[MARTIN:] Last week.

[STATE:] At that time was there any discussion about any letter, parole letter?

[MARTIN:] When I first met y'all last week?

[STATE:] Yes.

[MARTIN:] Well, I asked would [the prosecutor] write me a letter.

. . . .

[STATE:] Did [the prosecutor] say she would?

[MARTIN:] Yes, she did.

On cross-examination, defense counsel further questioned Martin about the letter and his reason for testifying:

[DEFENSE COUNSEL:] So this deal about giving something back to the community, the community's going to kind of give something back to you, too, aren't they?

[MARTIN:] What do you mean?

[DEFENSE COUNSEL:] *Well, in the form of a letter it's going to get you out.*

[MARTIN:] Well, really the letter wouldn't get me out.

[DEFENSE COUNSEL:] *Oh, it won't do—won't help you at all?*

[MARTIN:] Well, I'm not saying it won't help me. It's not going to just get me out.

[DEFENSE COUNSEL:] *Why did you ask that? Why did you make that a condition?*

[MARTIN:] I didn't make it a condition.

[DEFENSE COUNSEL:] It's just something they offered you?

[MARTIN:] No, it's not.

[DEFENSE COUNSEL:] Something you're going to receive?

[MARTIN:] Yes.

[DEFENSE COUNSEL:] All right. Why are you so sure about that?

[MARTIN:] What [do] you mean?

[DEFENSE COUNSEL:] *Why are you so sure you're going to get a letter from the District Attorney's Office putting you on the street sooner than you should be?*

[MARTIN:] Well, for one, it's not going to put me on the street sooner, and for two, she had no reason to lie to me about it. [Emphasis supplied.]

On redirect, the State offered Martin's prior consistent statement under TEX.R.CRIM. EVID. 801(e)(1)(B) to rebut the allegation that Martin had an improper motive to testify or to fabricate his testimony. Appellant's counsel objected on the grounds that the prior consistent statement was inadmissible because it was offered by the State to bolster Martin's testimony and that appellant's constitutional rights would be violated if the statement was admitted. The trial court ad-

mitted the prior consistent statement over defense counsel's objections.

■ In his first point, appellant contends the State used Martin's prior consistent statement improperly to bolster his testimony. Specifically, appellant argues that because the issue of improper motive was first broached on direct examination by the State, when the prosecutor asked Martin about the letter to the parole board, the prior consistent statement was not offered to "rebut" a subsequent charge made by the appellant of improper motive under Rule 801(e)(1)(B). Rather, appellant urges that the statement was used to bolster the credibility of Martin's testimony.[1] We disagree.

■ The trial court's determination of the admissibility of evidence under Rule 801(e)(1)(B) is reviewed under an abuse of discretion standard. *See Lawton v. State,* 913 S.W.2d 542, 561 (Tex.Crim.App.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996); *Wigiert v. State,* 948 S.W.2d 54, 56 (Tex.App.—Fort Worth 1997, no pet.). Rule 801(e)(1)(B) states that a prior consistent statement is admissible if:

(1) the declarant testifies at trial;

(2) the declarant is subject to cross-examination concerning the statement;

(3) the prior statement is consistent with the declarant's testimony at trial; and

(4) the prior statement is offered to rebut an express or implied charge against the declarant of recent fabrication or improper motive or influence.

*See* TEX.R.CRIM. EVID. 801(e)(1)(B). This rule is identical to its federal counterpart, FED.R.EVID. 801(d)(1)(B), which states that a statement is not hearsay if

[t]he declarant testifies at the trial ... and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's testimony and is offered to rebut an express or im-

plied charge against the declarant of recent fabrication or improper influence or motive.

FED.R.EVID. 801(d)(1)(B).

Although this is a case of first impression, we are guided by our sister courts in the federal circuits who have addressed this issue under FED.R.EVID. 801(d)(1)(B). *See Campbell v. State,* 718 S.W.2d 712, 716–17 (Tex.Crim.App.1986) (in adopting TEX. R.CRIM. EVID. 801(e)(1)(B) legislature intended to adopt language of FED.R.EVID. 801(d)(1)(B) and its interpretation). At least three federal circuits have addressed appellant's contention, and all have rejected it. In each case, the federal appellate court held that the State's anticipation of an attack on a witness's credibility does not preclude the introduction of a witness's prior consistent statement as rebuttal evidence after a witness has been impeached on cross-examination. *See United States v. Montague,* 958 F.2d 1094, 1096 (D.C.Cir.1992); *United States v. Brennan,* 798 F.2d 581, 588 (2d Cir.1986); *United States v. Allen,* 579 F.2d 531, 532–33 (9 th Cir.), *cert. denied,* 439 U.S. 933, 99 S.Ct. 326, 58 L.Ed.2d 329 (1978).

■ It is undisputed in this case that appellant attempted to impeach Martin before the State offered into evidence the prior consistent statement. During appellant's cross-examination of Martin, appellant's counsel repeatedly implied Martin's motive for testifying for the State was the State's promise to send the letter to the parole board to assist him in receiving parole. This laid the predicate under Rule 801(e)(1)(B) for the State to offer Martin's prior consistent statement to rehabilitate him and to rebut appellant's implied allegations of improper motive. The fact that the State framed its direct of Martin to defuse appellant's anticipated attempt to impugn Martin's motives did not deprive the State of the right to rehabilitate Martin

---

1. Bolstering occurs when additional evidence is used to add truthfulness or greater weight to earlier, unimpeached evidence offered by the same party. *See Williams v. State,* 927 S.W.2d 752, 763 (Tex.App.—El Paso 1996, pet. ref'd). Stated differently, "bolstering" refers to any evidence that is offered for the sole purpose of convincing the fact finder that a particular wit-

ness or source of evidence is worthy of credit, without substantively contributing to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *See Cohn v. State,* 849 S.W.2d 817, 819–20 (Tex. Crim.App.1993); *see also* TEX.R.CRIM. EVID. 401.

with the prior consistent statement. *See Montague,* 958 F.2d at 1096. Nor was the prior consistent statement an improper attempt to bolster "unimpeached" testimony; it was clearly offered to rebut appellant's charge that Martin's earlier testimony was improperly motivated by the State's promise to write the parole board on Martin's behalf. We find, therefore, that Martin's prior consistent statement was properly admitted under Rule 801(e)(1)(B) for purposes of rehabilitating an impeached witness. *See Wigiert,* 948 S.W.2d at 61; *Williams,* 927 S.W.2d at 764. Appellant's first point is overruled.

■ In his second point, appellant argues that Martin's prior consistent statement was inadmissible under Rule 801(e)(1)(B) because it was made at a time when Martin had a motive to fabricate. In order to complain on appeal that a prior statement is inadmissible because it does not predate the motive to fabricate, an appellant must have objected on that basis to the trial court. *See Meyers v. State,* 865 S.W.2d 523, 524–25 (Tex.App.—Houston [14 th Dist.] 1993, pet. ref'd); *see also Ray v. State,* 764 S.W.2d 406, 411 (Tex. App.—Houston [14 th Dist.] 1988, pet. ref'd). Appellant acknowledges that he never raised this complaint in the court below. Therefore, the complaint was not preserved for appeal and is waived. *See* TEX.R.APP. P. 33.1(a). Appellant's second point is overruled.

■ In appellant's third point, he complains that the admission of Martin's prior consistent statement violated his right of confrontation and right to due process. Appellant did not complain in the trial court that his right of confrontation was being violated. Thus, he has failed to preserve this complaint for appellate review. *See id.; Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App.1990).

■ With respect to appellant's contention that his right to due process was violated, we find this argument meritless. The appropriate test for a due process complaint involving a rule of evidence is found in *Fuller v. State,* 829 S.W.2d 191 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993), in which the court of criminal appeals stated:

> Our impression of the sparse case law in this area of constitutional interpretation is that rules for the admission and exclusion of evidence should be found offensive to notions of fundamental fairness embodied in the United States Constitution only when, (1) without a rational basis, they disadvantage the defendant more severely than they do the State or (2) arbitrarily exclude reliable defensive evidence without achieving a superior social benefit.

*Id.* at 208 (citing *Rock v. Arkansas,* 483 U.S. 44, 53–56, 107 S.Ct. 2704, 2710–11, 97 L.Ed.2d 37, 47–49 (1987)). The social interest involved here requires consideration be given to the integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process. *See Taylor v. Illinois,* 484 U.S. 400, 414–15, 108 S.Ct. 646, 656, 98 L.Ed.2d 798, 814 (1988).

We find no evidence in this case that the application of Rule 801(e)(1)(B) disadvantaged the appellant more severely than the State. Rule 801(e)(1)(B) permits either party, whether State or defendant, to rebut allegations of recent fabrication or improper motive and thereby rehabilitate a witness's credibility in front of the fact finder. The mere fact that appellant did not benefit from its application in this case does not amount to a violation of appellant's due process. Additionally, there has been no showing that the rule was used in a manner to arbitrarily exclude reliable defensive evidence. In fact, the rule worked to ensure that appellant's defensive evidence was reliable and did not mislead the jury. The jury heard all of the evidence and was better able to determine the weight Martin's testimony should be given. For these reasons, we hold appellant's right to due process was not violated. Appellant's third point is overruled.

In his fourth point, appellant contends the trial court erred in denying his motion for mistrial based upon the State's allegedly improper jury argument. During its case in

chief, the State called Thaddeus Smith, an accomplice, who testified that appellant told him that the reason he shot Davis was because he was "putting in work when he seen [sic] work." Smith clarified that "putting in work" is "Crip speak" which means killing someone in the name of your gang.

In closing, the State analogized the gang slang to mean that killing Davis "had no more meaning to [appellant] than putting in work. That is what this person does for a living." Defense counsel timely objected and asked for an instruction to disregard. The court sustained the objection and promptly instructed the jury to disregard the State's improper comments; but denied counsel's subsequent motion for mistrial.

 The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted into evidence. *See Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim. App. [Panel Op.] 1980); *Faulkner v. State*, 940 S.W.2d 308, 311 (Tex.App.—Fort Worth 1997, pet. ref'd) (en banc op. on reh'g). To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *See Felder v. State*, 848 S.W.2d 85, 94–95 (Tex.Crim.App.1992), *cert. denied*, 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim.App.1973). An instruction to disregard jury argument is generally sufficient to cure error, unless the remark is so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonishment. *See Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim.App.), *cert. denied*, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995); *McKay v. State*, 707 S.W.2d 23, 37 (Tex.Crim.App. 1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *Faulkner*, 940 S.W.2d at 312.

 Although the State may have used the Crip phrase "putting in work" out of context, we find the State's argument was not so inflammatory that the trial court's instruction to disregard could not cure the harm, if any, caused by the statement. Appellant's fourth point is overruled.

The judgment of the trial court is affirmed.