**Affirmed and Memorandum Opinion filed October 9, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00721-CR
_____

**KELLEH MICHAEL CONTEH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 1274972**

## MEMORANDUM OPINION

Appellant Kelleh Michael Conteh was convicted of aggravated sexual assault of a child. Punishment was assessed at fifty-five years' imprisonment. In two issues, appellant argues that the trial court abused its discretion by admitting two objectionable documents into evidence. For the reasons that follow, we affirm the trial court's judgment.

# BACKGROUND

In November 2006, appellant moved into an apartment with the complainant, her mother, and her three younger sisters. Though unrelated biologically, appellant regarded himself as a father figure in the complainant's life. When she was only thirteen years old, appellant began sharing the same bed as the complainant, saying that it was an African tradition for fathers to sleep in the same room as their daughters. The practice, he had explained, was intended to protect young girls from harm. While sleeping together, appellant initiated the first of many sexual encounters, which continued until the complainant turned sixteen.

In the beginning, appellant had sex with the complainant almost every day, or at the least, four to five times per week. He kept the complainant silent about the assaults by telling her that no one would believe her if she told, or that she would inflict pain on her mother and sisters if he were ever taken away.

The assaults happened with less frequency when the complainant turned fifteen. By that time, she had a high school boyfriend and stayed out more often. Appellant reacted angrily when he discovered the complainant's other relationship. He composed a series of three letters to the complainant, each expressing his jealousy and dismay over her relationship with her boyfriend. Appellant told her to throw the letters away after reading them. Instead, she placed them in her pocket with the hope that her mother would find them in the laundry. When her mother did discover the letters, the complainant was called into her mother's bedroom to discuss her suspicions privately. The complainant told her mother about the abuse, but her mother "looked at [her] with hatred," appearing more upset with her daughter than with appellant. Her mother then confronted appellant with the abuse, but he denied any sort of assault and claimed that the complainant and her sister were trying to get him out of the house.

The following morning, appellant told the complainant that she needed to fix the problem she had created. She complied by writing a letter recanting her claim that she was ever abused. That letter, in its entirety, is reproduced as follows:

Dear Daddy[,]

I am so sorry for putting you in this predicament. I just wanted to get back at you for ruining our relationship with my mommy, and putting your hands on us. And most of all, letting your friends do that to me and then allow one of them to come back.

I had a dream that Michael Lee rapped [sic] me and you laughed. Ever since then, I thought that "Birds of a Feather fly Together."

How did I put this together? I know that my mommy had an idea about us since [living in the apartment] and I thought for sure that all of this would get her to put you out. But when she said that we'll have to go to court and you'll have to go to jail, I felt dead wrong even though I was already. I don't want to be responsible for your time in prison because of this. Something that wasn't real.

I know that I'm going to get in a lot of trouble, but I'd rather be punished for something that's true rather than you being in jail for something that's not. If my mommy loves you, she loves you. I just wanted to get my and [my sister's] relationship back with each other and my mommy. If you promise to never let your friends do that again and never ever put your hands on us again, I'll never want you out of this house again! I know that you're going show my mommy. [sic]

I'm just so sorry.

P.S.: No one put me up to this. I did it myself. (Why am I writing this letter. I had a dream that I was in hell for this. I was burnt alive.)

Appellant was allowed to remain in the home. Though the assaults eventually ended after the complainant turned sixteen, the complainant still felt that she had no one to support her, not even her mother. She kept the abuse a secret until her high school teacher asked that she write an essay about making a difficult decision. The complainant chose to write about telling her mother about the abuse. In her essay, the complainant wrote that she

3

was molested at thirteen by a man denoted only as her stepdad. She indicated that at age fifteen, she gave the very disturbing news to her mother and sisters, "but they had no choice but to accept it." The complainant also claimed that her mother had supported her, and that she was very glad to be out of her relationship with appellant. The teacher took the information to authorities, and appellant was subsequently arrested.

The complainant's mother visited appellant in jail several times before trial. There, appellant admitted that he committed the acts for which he stood accused. The complainant's mother insisted that he write a letter of apology to the complainant. Appellant ultimately wrote three letters, two to the complainant and one to her mother. In the letter to the mother, appellant said that he was going to hang for his actions. He took full blame for the hurt that he had caused, and offered to spend the rest of his life trying to make it up to the complainant. In one part of the letter, he also wrote that "[t]he only way I can get this case dropped is if [the complainant] doesn't show up for my trial or she fills out an affidavit stating nothing happened."

In his other letters, appellant asked the complainant if she "could show [him] a lil [sic] mercy." He pleaded for forgiveness, claiming that he was sorry for all the emotional pain he had caused. He also asked the complainant for her blessing because he wanted to marry her mother and he was still ashamed for violating and taking advantage of her. Appellant claimed that he never intended to hurt her, explaining that "[t]he devil took a hold of [his] flesh."

At trial, appellant objected when the prosecutor offered into evidence the two documents written by the complainant. He objected to the first letter, in which the complainant recanted her allegations of abuse, arguing that "it goes into extraneous matters . . . that are prejudicial." As for the school essay, appellant objected that the document constituted improper bolstering and that it should not be admitted because he had not yet cross-examined her. The trial court overruled appellant's objections and

4

allowed the two documents to be published to the jury. On appeal, appellant argues that the trial court reversibly erred by admitting the two documents over his objection.

## ANALYSIS

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to guiding rules or principles. *Makeig v. State*, 802 S.W.2d 59, 62 (Tex. Crim. App. 1990). Because the trial court has no discretion in determining the applicable law, the trial court also abuses its discretion when it fails to analyze the law correctly and apply it to the facts of the case. *State v. Kurtz*, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004). Under this standard, the trial court's ruling will not be disturbed unless it lies clearly outside the zone of reasonable disagreement. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

### A.    Recant Letter

In his first issue, appellant contends that the complainant's letter was inadmissible because it contained references to extraneous bad acts. To constitute an extraneous offense, the evidence must show a crime or bad act and that the defendant was connected to it. *Lockhart v. State*, 847 S.W.2d 568, 573 (Tex. Crim. App. 1992). If the evidence fails to show that an offense was committed or that the defendant was connected to the offense, then evidence of an extraneous offense is not established. *Harris v. State*, 738 S.W.2d 207, 224 (Tex. Crim. App. 1986) (op. on reh'g).

Appellant focuses on language from the letter showing that he allowed his friends to "do that" to the complainant. Although the letter does not specify the meaning of "that," appellant argues that it is "highly suggestive" that the referenced conduct was sexual in nature. We find the language too vague to permit any definite conclusion. The word "that" could stand for any number of acts, and not all are necessarily criminal or bad. The letter's

explicit mention of rape in a later paragraph does not change this analysis, as the letter plainly states that the rape was imagined in a dream, and not an act attributable to appellant. Because the letter does not describe any criminal activity or bad acts, it was not excludable for containing an extraneous offense. *See Lockhart*, 847 S.W.2d at 573 (concluding that diary containing miscellaneous names, figures, and notations was not excludable where it did not depict any criminal activity of bad acts).

We still consider whether the letter was inadmissible on the basis of relevance. *Mayes v. State*, 816 S.W.2d 79, 84 (Tex. Crim. App. 1991). Generally, all relevant evidence is admissible. Tex. R. Evid. 402. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable that it would be without the evidence. Tex. R. Evid. 401.

Here, the letter mentioned the apartment complex where the complainant lived with her family and appellant. The letter was therefore relevant in connecting appellant to the place where the assaults occurred. *Cf. Lockhart*, 847 S.W.2d at 574 (concluding that diary was relevant where testimony showed that it belonged to defendant and where it was found at the scene of the crime).

## B.      High School Essay

In his second issue, appellant challenges the admissibility of the complainant's high school essay. He contends that the essay constituted a prior consistent statement, and that it could not be admitted to bolster the complainant's testimony when her credibility had not yet been attacked.

"Bolstering" refers to any evidence offered for the sole purpose of convincing the finder of fact that a particular witness or source of evidence is worthy of credit, without substantively contributing to relevance. *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993) (citing Tex. R. Evid. 401). Bolstering is an old objection, existing prior to the adoption of the rules of evidence. *See Rivas v. State*, 275 S.W.3d 880, 886 (Tex. Crim.

6

App. 2009). Although the term "bolstering" did not survive the codification of our rules, "it has not yet expired." *Id.* As the court of criminal appeals explained, bolstering appears to have roots in several evidentiary rules. *Id.* Depending on the setting, one bolstering objection could refer to Rule 608(a), which provides that opinion or reputation evidence should not be admitted to support a witness's character for truthfulness unless that witness's character for truthfulness has already been attacked by an opposing party. *Id.* A bolstering objection could also refer to Rule 613(c), which makes inadmissible any prior statement of a witness that is consistent with the witness's own testimony, except as provided by Rule 801(e)(1)(B). *Id.* at 886–87; *e.g.*, *Bolden v. State*, 967 S.W.2d 895, 898–99 (Tex. App.—Fort Worth 1998, pet. ref'd) (holding that admission of prior consistent statement not bolstering where offered to rebut charge of improper motive). This rule excludes prior consistent statements as substantive evidence, thus reiterating the principles of hearsay. *Rivas*, 275 S.W.3d at 886–87.

Appellant has not identified what theory of bolstering was asserted at trial. By our reading, the essay was not introduced as opinion or reputation evidence. Therefore, appellant's objection would not appear to implicate the restrictions of Rule 608(a). Appellant's objection seems to invoke Rule 613(c) instead, but for the following reasons, that rule would not exclude the essay either.

First, the essay was not entirely consistent with the complainant's trial testimony. The complainant affirmed in her essay that she had the specific support of her mother after the truth of her molestation had been revealed. At trial, however, the complainant testified that her mother had sided with appellant rather than her. The complainant disclaimed the statements in her essay, explaining that she had forged new facts because she did not want to portray her mother as a bad person to her teacher. Thus, to the extent that the essay contained prior inconsistent statements, the bolstering objection would not apply.

Further, although the essay contained some prior consistent statements, appellant has not shown that the essay was admitted for the "sole purpose" of bolstering the

complainant's testimony. In his brief, appellant writes, without much argument, that the essay "was being used as a prior consistent statement for the sole purpose of enhancing her credibility where the complainant had not been impeached." Appellant's argument assumes that the essay was offered exclusively for the truth of its contents, but the record supports an alternative explanation: to describe how appellant became a suspect in the case.

When the essay was offered into evidence, the complainant had already testified about the history of abuse. She stated that she had reached an age where the assaults had eventually stopped, but she indicated that despite this reprieve, she was still uncomfortable with confiding in someone outside her family. The essay provided the only answer to the prosecutor's question inquiring why the complainant finally decided to tell someone other than her mother. This in turn completed the prosecutor's case of explaining how appellant came to be arrested. The trial court could have reasonably discerned this purpose and concluded that the essay was not offered solely to enhance the complainant's credibility. Therefore, its decision to admit the essay was not an abuse of discretion. *See Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008) ("[T]he trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case."); *Jones v. State*, 843 S.W.2d 487, 499 (Tex. Crim. App. 1992) (holding that evidence was not inadmissible where it was not introduced for the truth of the matter asserted, but to explain how a witness came to suspect a defendant's involvement in the crime).

## C.    Harmless Error

Assuming for the sake of argument that the trial court did abuse its discretion, any error in admitting the letter or essay would be subject to a harm analysis for nonconstitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Roethel v. State*, 80 S.W.3d 276, 281 (Tex. App.—Austin 2002, no pet.). Under this standard, error must be disregarded unless it affects a defendant's substantial rights. Tex.

R. App. P. 44.2(b). An error affects a defendant's substantial rights when the error has a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). If the error had no or only a slight influence on the verdict, the error is harmless. *Id.*

In this case, appellant wrote a series of letters to the complainant and her mother during his pretrial confinement. The letters express his regret for causing the family so much pain. In his letters to the complainant, appellant wrote that the complainant was "telling da truth." He admitted to violating her and taking advantage of her, crediting responsibility because "[t]he devil took a hold of [his] flesh."

In his letter to the complainant's mother, appellant described his certainty that he would hang for what he had done. He hoped that the complainant's mother would accept his apology, even though he knew that she could "easily use it against [him]." He suggested that the complainant should be pressured into not testifying at trial so that his case would be dropped. Appellant also suggested that the complainant should prepare an affidavit swearing that nothing had ever happened between them. Appellant testified at trial that he did not write this letter to the complainant's mother, but the jury, as the sole judge of credibility, was free to reject this testimony, compare the handwriting between the letters, and determine that he was the author.

Appellant also testified that he shared a bed with the complainant and her sisters, claiming this African tradition was intended to prevent the children from leaving the house. Although appellant denied the allegations of sexual assault, his credibility was challenged by evidence of his own criminal history, testimony from the complainant, and the corroborating testimony of her mother. In light of all this evidence, even if the letter and essay had been admitted in error, we cannot say that they had a substantial and injurious effect on the jury's verdict.

## CONCLUSION

Appellant's two issues are overruled, and the judgment of the trial court is affirmed.


/s/            Adele Hedges
                     Chief Justice


Panel consists of Chief Justice Hedges and Justices Brown and Busby.

Do Not Publish — Tex. R. App. P. 47.2(b).