Opinion filed November 19, 2020



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00298-CR

_____

## PEDRO TORRES GUTIERREZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 106th District Court**
**Dawson County, Texas**
**Trial Court Cause No. 17-7752**

## O P I N I O N

The jury convicted Pedro Torres Gutierrez of continuous sexual abuse of a child and indecency with a child. The jury assessed Appellant's punishment at confinement for life on the conviction for continuous sexual abuse of a child and at confinement for a term of twenty years on the conviction for indecency with a child. The trial court ordered that the sentences were to be served concurrently in the Institutional Division of the Texas Department of Criminal Justice. Appellant brings three issues on appeal that challenge his convictions. We affirm.

*Background Facts*

This appeal arises from a delayed outcry of sexual abuse. Appellant is the uncle of the victim, A.G. A.G. was nineteen years of age at trial. When she was seventeen, A.G. made an outcry to her high school counselor that Appellant had sexually abused her on multiple occasions when she was ten years old or younger.

Appellant has not challenged the sufficiency of the evidence supporting his convictions. However, the nature of Appellant's complaints on appeal require a discussion of the evidence offered at trial. A.G. testified that she was close with Appellant and that she would see him once or twice a week when she was young. She then began spending more time at Appellant's home because her parents were having marital problems.

A.G. testified that the first incident of sexual conduct occurred when she was in the third grade. A.G. was in a recliner watching TV in Appellant's home when Appellant got in the recliner and under a blanket with A.G. A.G. testified that Appellant put his hand into her shorts, at which point he rubbed her vagina. A.G. further testified that Appellant told her to give him a kiss.

The second episode that A.G. testified about occurred after she, her brother, and her cousins had been swimming at Appellant's house. A.G. had not planned to go swimming when she came to Appellant's house, so she asked Appellant if there were any dry clothes at his house that she could wear. A.G. testified that Appellant provided her with some of her cousin's clothes to put on and that Appellant attempted to watch as she changed into the dry clothes. Appellant then told A.G. to sit on the bed with him and asked her why she did not want him to watch her change clothes. He then asked her if she loved him and he asked her to give him a kiss. Appellant then put one of his hands under her shirt and the other hand into her shorts under her underwear. A.G. testified that Appellant also had her rub his crotch over his jeans. A.G. stated that Appellant told her to "kiss it" but that she refused.

The third episode that A.G. testified about occurred when she was in the fourth grade. It occurred while she was asleep at Appellant's home. A.G. testified that she awoke to find Appellant with his hand between her legs in her shorts and that he was "fingering" her. She stated that Appellant told her "shush, shush" and tried to "pat" her back to sleep. A.G. further testified that Appellant's wife came to the doorway of the room and called Appellant by name, at which point he got up.

The fourth episode described by A.G. occurred when she was in the fifth grade. She testified that Appellant came to her home to pick her up to visit her young cousins that lived with Appellant. A.G. testified that Appellant ran some errands with her on the way to his house, including going to Walmart. A.G. stated that Appellant grabbed her "butt," rubbed on her chest, and asked her about her encounters with boys. While at Walmart, Appellant offered to buy her thong underwear and a razor to shave her pubic hair because he told her that he had noticed that she had started growing hair "down there."

The fifth episode that A.G. described occurred at Appellant's house. She testified that, when the other kids went outside to play, Appellant called for her to bring him his boots. She stated that Appellant had his penis out like he was using the restroom. A.G. testified that Appellant turned around to face her, at which point she just put the boots down and ran out of the house.

The final episode occurred when A.G. rode with Appellant to get a pizza. They left from A.G.'s grandmother's house to get the pizza. While driving, Appellant unbuckled A.G.'s seatbelt and pulled her closer to him. Appellant asked her if she loved him. A.G. testified that Appellant held her hand and told her to give him a kiss. Appellant also stopped by his house and asked A.G. to come inside with him. A.G. testified that, when Appellant noticed that she was walking slowly, Appellant told her: "It's okay. I won't do that again, okay? I won't do that again."

In addition to A.G.'s testimony, the State presented the testimony of four individuals that visited with A.G. after she made her outcry. For the most part, these witnesses testified about what A.G. had told them about her interactions with Appellant. Appellant objected to the testimony of each of these witnesses. The trial court conducted hearings outside the presence of the jury to consider Appellant's objections to their testimony. The trial court overruled Appellant's objections to each witness's testimony. These evidentiary rulings are the subject of Appellant's issues on appeal.

*Analysis*

We review a trial court's ruling on admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We will uphold a trial court's evidentiary ruling on appeal if it is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114, 125–26 (Tex. Crim. App. 2006); *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.— Eastland 2015, no pet.).

*Hearsay*

In his first issue, Appellant asserts that the trial court erred by overruling his hearsay objections to the four witnesses that testified about what A.G. had told them about her encounters with Appellant. Hearsay is a statement, other than one made by the declarant while testifying at trial, that is offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d); *Tienda v. State*, 479 S.W.3d 863, 874 (Tex. App.— Eastland 2015, no pet.). Hearsay is inadmissible except as provided by statute or the Rules of Evidence. TEX. R. EVID. 802; *Tienda*, 479 S.W.3d at 874.

Appellant first asserts that the trial court erred by permitting A.G.'s high school counselor, Amy Baker, to testify as an outcry witness. An "outcry statement"

4

under Article 38.072 of the Texas Code of Criminal Procedure is a statutory exception to the hearsay rule. TEX. CODE CRIM. PROC. ANN. art. 38.072 (West Supp. 2020).

> Because it is often traumatic for children to testify in a courtroom setting, especially about sexual offenses committed against them, the Legislature enacted Article 38.072 to admit the testimony of the first adult a child confides in regarding the abuse. This witness may recite the child's out-of-court statements concerning the offense, and that testimony is substantive evidence of the crime.

*Martinez v. State*, 178 S.W.3d 806, 810–11 (Tex. Crim. App. 2005) (footnote omitted). Article 38.072 provides that a child's outcry statement is not inadmissible if (1) the State gives the defendant proper notice; (2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and (3) the child testifies. CRIM. PROC. art. 38.072, § 2(b). Prior to trial, the State designated Baker as an outcry witness.

Article 38.072 applies to certain offenses committed against a child younger than fourteen years of age. *Id.* art. 38.072, § 1. Under section 2, an admissible outcry statement must be made by the "child" against whom the alleged crime was committed. *Id.* art. 38.072, § 2(a)(2). Appellant asserts that A.G. was no longer a child under the statute because she was seventeen at the time that she made the outcry statement. The trial court overruled Appellant's objection on this basis to the Baker's outcry testimony. Baker testified that A.G. told her "that her uncle had been touching her and speaking sexually explicitly to her."

Appellant's contention is based on a construction of the word "child" as it is used in Article 38.072, section 2(a)(2). "Statutory construction is a question of law, which we review de novo." *Cary v. State*, 507 S.W.3d 750, 756 (Tex. Crim. App. 2016). Article 3.01 provides that "[a]ll words, phrases and terms used in this Code are to be taken and understood in their usual acceptation in common

5

language, except where specially defined." CRIM. PROC. art. 3.01 (West 2015). Article 38.072, section 2(a)(2) does not specify a particular age of the victim at the time the outcry statement is made in order for it to constitute the statement of a "child."

In *Harvey v. State*, the Texarkana Court of Appeals examined the meaning of "child" as used in Article 38.072, section 2(a)(2). 123 S.W.3d 623, 627–29 (Tex. App.—Texarkana 2003, pet. ref'd). The sexual offense in *Harvey* was committed while the victim was twelve, but she did not make her outcry until she was eighteen. *Id.* at 627. The court concluded that "child," as used in section 2(a)(2), means a person that has not reached the age of eighteen. *Id.* at 628–29. The court cited several statutes that indicate that a child is someone that is under eighteen years of age. *Id.* The court also relied on the fact that section 2(a)(3) provides that the outcry statement is the outcry to the first person eighteen years of age or older, which the court read to mean that a child making a valid outcry is a person younger than eighteen. *Id.* at 629.

In *Davis v. State*, we cited *Harvey* for the proposition that a complainant must be under the age of eighteen when an outcry statement is made in order for it to be admissible under Article 38.072. No. 11-14-00177-CR, 2016 WL 3382539, at *1 (Tex. App.—Eastland June 16, 2016, no pet.). The complainant in *Davis* was fifteen at the time of the outcry. *Id.*

The Dallas Court of Appeals addressed a factually analogous situation in *Olivera v. State*, where the child victim was seventeen at the time of the outcry. No. 05-08-00527-CR, 2009 WL 3740781, at *2 (Tex. App.—Dallas Nov. 10, 2009, pet. ref'd). The defendant in *Olivera* asserted that a statement made by a seventeen-year-old did not qualify as an outcry statement under Article 38.072. *Id.* at *6. The court relied on the holding in *Harvey* to conclude that an outcry made by a seventeen-year-old is a statement by a child under Article 38.072. *Id.* at *6–7.

6

Appellant acknowledges the authority of *Harvey* and its progeny, but he contends that a different construction of "child" should be used. Appellant asserts that, in the absence of an age set out in Article 38.072, section 2(a)(2), we should look at the definition of "child" in the particular Penal Code provision with which a defendant is charged to determine if the outcry statement was made by a child. Because Appellant was charged with continuous sexual abuse of a child and indecency with a child, he contends that a child, for the purpose of Article 38.072, section 2(a)(2), should be someone younger than seventeen because that is how both Penal Code provisions define a child. *See* TEX. PENAL CODE ANN. § 21.02(a) (West 2019) (utilizing the definition contained in Sections 22.011(c) and 21.11(a)). Appellant asserts that, since a person that is seventeen cannot be the victim of these offenses, a person should not be considered to be a child under Article 38.072, section 2(a)(2) if they are seventeen.

We disagree with Appellant's analysis. Some of the offenses listed in Article 38.072 do not specify a particular age for a child that is the victim of the alleged offense, while others list an age younger than seventeen and others list an age younger than eighteen. *See Olivera*, 2009 WL 3740781, at *7 n.6 (listing the various penal offenses covered by Article 38.072 and their respective definitions of a child); *see also Harvey*, 123 S.W.3d at 628–29 (containing a comprehensive listing of the various statutory references to a person's age to define a child). There is nothing in Article 38.072 that suggests that the legislature intended for its application to be dependent on the particular offense for which the defendant is charged, particularly when several of the listed offenses do not provide an age. Furthermore, the age of seventeen as specified in Sections 21.02 and 21.11 speaks to the age of the victim at the time the offense is committed, which is a matter that Article 38.072, section 1 specifically addresses by providing that the offense must be committed against a child that is younger than fourteen at the time the offense is committed.

We agree with the reasoning in *Harvey*. If an outcry is a statement made to the first person that is eighteen years of age or older under Article 38.072, section 2(a)(3), then a person under the age of eighteen is a child under section 2(a)(2). *See Harvey*, 123 S.W.3d at 629. This reading of the statute comports with the traditional rule that, absent a statutory exception, a person is a child if they are younger than eighteen. *See id.* at 628–29. Additionally, this reading of Article 38.072, section 2(a)(2) provides for a uniform application of the outcry statute. Accordingly, the trial court did not err by overruling Appellant's objection that Baker could not be an outcry witness because A.G. was seventeen at the time of the outcry.

Appellant next asserts that the trial court erred by permitting A.G.'s counselor, Dr. Nicole Black, to testify about what A.G. told Black about the assaults because the statements were not admissible under the hearsay exception for statements made for the purpose of a medical diagnosis or treatment. *See* TEX. R. EVID. 803(4). In order for a statement to be admissible under Rule 803(4), it must be pertinent to diagnosis or treatment. *Taylor v. State*, 268 S.W.3d 571, 591 (Tex. Crim. App. 2008); *Tienda*, 479 S.W.3d at 879.

The State contends that Appellant did not preserve this hearsay complaint for appellate review because he did not object to Black's testimony on the basis that it contained hearsay. We agree. "As a prerequisite to presenting a complaint for appellate review," a party must have made a timely request, objection, or motion to the trial court "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). Preservation of error is a systemic requirement on appeal. *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005). If an issue has not been preserved for appeal, the appellate court should not address the merits of that issue. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

Appellant objected to Black's testimony, but only on the basis that it was not admissible under Rule 705. *See* Tex. R. Evid. 705(c) ("An expert's opinion is inadmissible if the underlying facts or data do not provide a sufficient basis for the opinion."). The hearing conducted outside the presence of the jury focused on whether the underlying facts or data provided a sufficient basis for Black's opinions as an expert witness. At the conclusion of the hearing, Appellant only objected to Black's testimony under Rule 705. Appellant's trial counsel stated the word "hearsay" in making his objection, but he later corrected himself to say the "testimonial statements of the victim in this case" to note that he was challenging the lack of data to corroborate A.G.'s statements to Black.[1]

Appellant next challenges statements that A.G. made to a sexual assault nurse examiner (SANE), Patricia Salazar. Appellant made a hearsay objection to Salazar testifying about any matters that A.G. told Salazar about the incidents with Appellant. Appellant's trial counsel cited Article 38.072 in making his hearsay objection, stating that the matters that A.G. told Salazar about the incidents were "nothing more than another outcry because [there was] no physical exam done." In making this objection, Appellant was relying on his contention that A.G.'s age of seventeen at the time of her conversation with Salazar precluded any outcry statements being admissible under Article 38.072. In response to Appellant's objection, the prosecutor argued that A.G.'s statements were admissible as either statements made for the purpose of medical diagnosis and treatment or prior consistent statements. The trial court overruled Appellant's objection to Salazar's testimony.

---

[1]Under Rules 703 and 705, an expert can recount hearsay testimony if it is evidence that the expert relied upon in forming his opinion if such evidence reasonably would be relied upon by experts in the field in forming opinions or inferences regarding the subject at issue. *See* Tex. R. Evid. 703, 705; *Niche Oilfield Services, LLC v. Carter*, 331 S.W.3d 563, 574 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Sosa by & through Grant v. Koshy*, 961 S.W.2d 420, 426–27 (Tex. App.—Houston [1st Dist.] 1997, pet. denied)).

The State contends that Appellant waived his objection that A.G.'s statements were not admissible under Rule 803(4) because Appellant's trial counsel did not cite the rule in making his hearsay objection. We disagree. The proponent of evidence usually has the burden of establishing its admissibility. *White v. State*, 549 S.W.3d 146, 151–52 (Tex. Crim. App. 2018). Thus, if the opposing side makes a proper objection to the admissibility of evidence, the proponent must demonstrate that the evidence overcomes the stated objection. *Id.* at 152. In most instances, a hearsay objection is sufficiently specific to require the offering party to show that the evidence either is not hearsay or is admissible under an exception to the hearsay rule. *Cofield v. State*, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994). Here, Appellant made a hearsay objection to the statements that A.G. made, and he cited Article 38.072 apparently in anticipation of what the State might argue to show that the statements were admissible. However, Appellant also argued that A.G.'s statements to Salazar were "nothing more than another outcry because [there was] no physical exam done." In response to Appellant's objection, the prosecutor cited the hearsay exception for statements made for the purpose of medical diagnosis or treatment. Accordingly, the admissibility of A.G.'s statements under Rule 803(4) was preserved for our review because Appellant presented it to the trial court by his reference to the lack of a physical exam performed by Salazar.

Salazar is a SANE working under the Department of Pediatrics at Texas Tech Physicians. She testified that she only does SANE exams for victims making a delayed outcry. Salazar testified that she obtained a medical history from A.G. on April 15, 2016, "in order to diagnose and treat, what do we need to do for this child." Salazar testified that, after she obtained a "detailed history," A.G. declined a physical examination. Salazar testified that, at the time she took the history, she did not know that A.G. would decline the physical examination. After the trial court overruled Appellant's objection, Salazar testified to the jury that a part of her evaluation of a

sexual assault victim includes determining whether a child needs to be referred for counseling or therapy and that she tries "to get some kind of idea how the child is doing mentally." Salazar recommended that A.G. go to therapy based on some of the problems that A.G. told her about, which included an attempted suicide.

Appellant asserts that A.G.'s statements to Salazar could not have been made for the purpose of medical treatment or diagnosis because Salazar did not diagnose or treat A.G. However, Salazar testified that, at the time that she took the history from A.G., she did not know that A.G. was going to later decline the physical examination. "[U]nlike statements made to non-medical professionals, which require affirmative evidence in the record on the issue of veracity, courts can infer from the record that the victim knew it was important to tell a [sexual assault nurse examiner] the truth in order to obtain medical treatment or diagnosis." *Franklin v. State*, 459 S.W.3d 670, 677 (Tex. App.—Texarkana 2015, pet. ref'd); *see Swofford v. State*, No. 12-14-00081-CR, 2015 WL 7019762, at *3 (Tex. App.—Tyler Nov. 12, 2015, no pet.) (mem. op., not designated for publication) ("The court of criminal appeals has not required the proponent of statements to a sexual assault nurse examiner to affirmatively demonstrate that the declarant was aware of the purpose of the statements and the need for veracity, and we decline to do so in this case.").

Furthermore, Salazar rendered treatment based on the history that A.G. provided because Salazar recommended therapy for A.G.'s mental health issues. "The object of a sexual assault exam is to ascertain whether the child has been sexually abused and to determine whether further medical attention is needed. Thus, statements describing acts of sexual abuse are pertinent to the victim's medical diagnosis and treatment." *Beheler v. State*, 3 S.W.3d 182, 188 (Tex. App.—Fort Worth 1999, pet. ref'd). The "identity of an offender falls within the ambit of [the Rule 803(4)] exception because it is relevant to treatment, particularly in incest

11

and family violence cases, insofar as it presents an environmental and safety issue that could frustrate diagnosis and treatment." *Trevizo v. State*, No. 08-12-0063-CR, 2014 WL 260591, at *7 (Tex. App.—El Paso Jan. 22, 2014, no pet.) (not designated for publication); *see also Bargas v. State*, 252 S.W.3d 876, 896 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("Because treatment of child abuse includes removing a child from an abusive setting, the identity of the abuser is pertinent to the medical treatment of the child.").

We view the evidence in the light most favorable to the trial court's evidentiary ruling. *Klein v. State*, 273 S.W.3d 297, 304 (Tex. Crim. App. 2008). We conclude that the trial court did not abuse its discretion by concluding that the history that A.G. provided to Salazar was for the purpose of diagnosis or treatment.

Appellant's final hearsay contention under his first issue concerns A.G.'s statements to Mary Infante, a forensic interviewer at the Child Advocacy Center (CAC) of the South Plains. Infante interviewed A.G. on March 23, 2016. The State sought to publish a recording of Infante's CAC interview of A.G. At the outset of Infante's testimony, Appellant's trial counsel requested a hearing outside the presence of the jury because he anticipated that Infante was going to testify about outcry statements that A.G. made to her. As was the case with Baker and Salazar, Appellant's trial counsel took the position that A.G.'s statements to Infante could not constitute an admissible outcry statement as a statutory exception to the hearsay rule because A.G. was seventeen at the time of the outcry.

In response, the State argued that the recorded interview was admissible under Article 38.071. CRIM. PROC. art. 38.071. The State also asserted that the recorded interview was admissible as an exception to the hearsay rule under *Hammons v. State*, 239 S.W.3d 798 (Tex. Crim. App. 2007). Appellant did not respond to the State's stated grounds for seeking the admission of the recorded interview. On appeal, the State concedes that the recorded interview was not admissible under

12

Article 38.071. Therefore, Appellant focuses his analysis on whether the recorded interview was admissible as a prior consistent statement under Rule 801(e)(1)(B), which was the matter addressed in *Hammons*.

Rule 801(e)(1)(B) of the Texas Rules of Evidence gives substantive, non-hearsay status to prior consistent statements of a witness proffered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. *Id.* at 804–05. There are four requirements that must be met for prior consistent statements to be admissible: (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony by the opponent; (3) the proponent must offer a prior statement that is consistent with the declarant's challenged in-court testimony; and (4) the prior consistent statement must be made prior to the time that the supposed motive to falsify arose. *Id.*

Appellant asserts on appeal that A.G.'s statements to Infante (and to Salazar) could not constitute a prior consistent statement because Appellant asserted that A.G.'s initial outcry was a fabrication and because Infante's interview of A.G. occurred after the initial outcry. The State contends that Appellant has not preserved this complaint for appellate review under the requirement of *Klein*. 273 S.W.3d at 312.

The court in *Klein* addressed a statement offered as a prior consistent statement under Rule 801(e)(1)(B). *Id.* at 304. At trial, the defendant only contested one element under the rule. *Id.* at 312. The court held that the defendant could not contest other elements under Rule 801(e)(1)(B) on appeal because the defendant did not raise them at trial. *Id.* The court stated that "it was incumbent upon appellant (as the losing party in the trial court) to alert the trial court to any other element[s] of rule 801(e)(1)(B) that would require exclusion of the complainant's out-of-court

13

statements." *Id.* (citing *Bolden v. State*, 967 S.W.2d 895, 896–99 (Tex. App.—Fort Worth 1998, pet. ref'd)).

We agree with the State that Appellant has not preserved his timing complaint under Rule 801(e)(1)(B) for appellate review as required by *Klein*. *Klein* dealt with the specific hearsay exception that is at issue in this case. *Id.* As the losing party, Appellant was required to alert the trial court to the elements of Rule 801(e)(1)(B) upon which he relies to assert that the trial court should have excluded A.G.'s recorded interview. *Id.* As noted by the Court of Criminal Appeals:

> [T]he party complaining on appeal (whether it be the State or the defendant) about a trial court's admission, exclusion, or suppression of evidence must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule or statute in question and its precise and proper application to the evidence in question. The issue . . . is not . . . whether the trial court's ruling is legally correct in every sense, but whether the complaining party on appeal brought to the trial court's attention the very complaint that party is now making on appeal.

*Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) (internal quotation marks omitted) (footnote omitted); *see Golliday v. State*, 560 S.W.3d 664, 669 (Tex. Crim. App. 2018) (quoting *Reyna*); *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009) ("[I]n order to preserve a complaint for appeal, the complaining party must have done everything necessary to bring the relevant evidentiary rule and its precise and proper application to the trial court's attention.") (citing *Reyna*). Appellant did not preserve his timing complaint under Rule 801(e)(1)(B) that he asserts on appeal because he did not bring it to the trial court's attention. *See Klein*, 273 S.W.3d at 312. The same analysis would apply to Salazar's testimony because Appellant did not cite any of the elements of Rule 801(e)(1)(B) to the trial court when the State sought to offer Salazar's testimony as a prior consistent statement.

14

Moreover, we disagree with Appellant's contention that the accounts that A.G. relayed to Salazar and Infante did not occur prior to when he alleged that A.G. fabricated her allegations against him. As noted previously, Appellant took the position at trial that A.G. had fabricated the allegations against him from the outset. However, Appellant also asserted that A.G. had fabricated the allegations on subsequent occasions. While cross-examining A.G., Appellant's trial counsel showed A.G. a copy of the indictment in the case to establish that it alleged an incorrect date for Count Two of the indictment. The grand jury returned the indictment on April 19, 2017, approximately one year after A.G. made her outcry to Baker and her statements to Salazar and Infante. Trial counsel also asked A.G. this question: "In fact, today is the first day you shared with anybody the details [of all of the incidents], right?" On a later occasion, trial counsel asked A.G.: "So it was a surprise until today?"—once again referencing all of the allegations that A.G. had made. Thus, while Appellant alleged that A.G. fabricated the allegations from the beginning, he also asserted that her trial testimony contained matters that she had not previously alleged. Therefore, A.G.'s statements to Salazar and Infante occurred prior to her testimony at trial that Appellant challenged as being fabricated. Accordingly, the trial court did not abuse its discretion by admitting A.G.'s statements to Salazar and Infante as prior statements.

We overrule Appellant's first issue.

*Qualifications of Expert*

In his second issue, Appellant asserts that the trial court erred by permitting Black to testify as an expert in "child sexual abuse." However, Appellant did not object to Black's expert testimony on the basis that she was not qualified to testify as an expert. Generally, there are three requirements of expert testimony that are commonly referred to as (1) qualification, (2) reliability, and (3) relevance. *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). The three requirements raise

15

distinct questions and issues, and an objection based on one of these requirements does not preserve error as to another. *Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

As noted previously, Appellant only objected to Black's testimony under Rule 705, which is an objection that addresses the reliability of an expert's opinion. *See Vela*, 209 S.W.3d at 133. In the absence of a challenge at trial to Black's qualifications to testify as an expert on child sexual abuse, Appellant has not preserved his objection to her qualifications for appellate review. *See* TEX. R. APP. P. 33.1; *Shaw*, 329 S.W.3d at 655. We overrule Appellant's second issue.

*Extraneous Accusations*

In his third issue, Appellant asserts that the trial court erred by allowing evidence of previous sexual assault accusations that had been made against Appellant. This evidence did not occur during a question-and-answer exchange between an attorney and a witness at trial. Instead, the allegations were contained in the CAC interview of A.G. that Infante conducted. Our task of reviewing the interview is complicated by the fact that the interview was not transcribed in the reporter's record when it was published to the jury.

The first instance of extraneous conduct being mentioned occurred when A.G. was explaining to Infante the frequency of Appellant's sexual abuse. A.G. told Infante that the conduct occurred more frequently after "some girl was trying to accuse him of trying to rape her." The second instance occurred when A.G. told Infante that other girls had accused Appellant of sexual misconduct and that he had "gotten away with it." A.G. stated that she did not make an earlier outcry because Appellant had gotten away with it in the past and she did not think that her report would make a difference.

Appellant's trial counsel objected a single time to A.G.'s reference to extraneous allegations. The reporter's record does not contain a time notation of

when the matter that Appellant objected to occurred during the recording. This objection resulted in the recording of the CAC interview being stopped so that the trial court could consider Appellant's objection. The State contends that Appellant objected after the first instance. The State asserts on appeal that Appellant did not preserve for appellate review his objection to the second instance. We disagree. In addition to challenging the first instance, Appellant also apprised the trial court that he objected to the second instance that would be occurring later on the recording. The trial court overruled Appellant's objection to the extraneous accusations on the basis that the statements were admissible as a part of the CAC interview.

Rule 404(b) prohibits the admission of extraneous-offense evidence at the guilt/innocence phase of a trial to prove that a defendant committed the charged offense in conformity with bad character. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011) (citing TEX. R. EVID. 404(b)). However, extraneous-offense evidence may be admissible when it has relevance apart from character conformity. *Id.* (citing *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003)). Such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). The exceptions listed under Rule 404(b) are neither mutually exclusive nor collectively exhaustive. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). "'Rule 404(b) is a rule of inclusion rather than exclusion.' The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)).

The State contends that the instances of extraneous accusations that A.G. mentioned in her CAC interview were relevant for noncharacter-conformity purposes. Specifically, the State asserts that the extraneous accusations would have

been relevant to rebut Appellant's assertion that A.G. had fabricated her allegations against Appellant. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (The State may present extraneous-offense evidence to rebut a defensive theory of fabrication.); *Webb v. State*, 575 S.W.3d 905, 908–09 (Tex. App.—Waco 2019, pet. ref'd). In this regard, rebuttal of a defensive theory is one of the permissible purposes for which extraneous-offense evidence may be admitted. *Moses*, 105 S.W.3d at 626.

We have previously discussed Appellant's efforts to assert that A.G.'s allegations were fabricated. In order for extraneous offenses to rebut an allegation of fabrication, there must be a showing that the extraneous offenses were similar to the charged conduct. *Webb*, 575 S.W.3d at 908. There were no details of the extraneous allegations provided at trial. However, A.G. explained during her CAC interview that the fact that Appellant had "gotten away with it" in the past was a reason why she delayed her outcry of sexual abuse. Appellant cited A.G.'s delayed outcry as a reason why her accusations were fabricated.

"Evidence of an extraneous offense is admissible to explain why a victim of sexual assault did not make a prompt outcry." *Isenhower v. State*, 261 S.W.3d 168, 179 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see Brown v. State*, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983) (holding that sexual assault victim's testimony that defendant threatened to kill her family was admissible to show reason for delayed outcry). Thus, the extraneous accusations that A.G. referenced in her CAC interview had a purpose other than character conformity. The trial court did not abuse its discretion by overruling Appellant's objection based on extraneous conduct. We overrule Appellant's third issue.

18

*This Court's Ruling*

We affirm the judgments of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


November 19, 2020

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.